# IN THE SUPREME COURT OF IOWA

No.15–0971

Filed May 25, 2017

**STATE OF IOWA,**

Appellee,

vs.

**EDDIE LAMONT VIRGIL,**

Appellant.

___

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, George L. Stigler, Judge.

Defendant seeks further review of court of appeals decision affirming his conviction for domestic abuse assault. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED FOR NEW TRIAL.**

Mark C. Smith, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Richard J. Bennett, Special Counsel (until withdrawal), Tyler J. Buller and Kyle P. Hanson, Assistant Attorneys General, Lucas A. Sterbick, Law Student, Tom Ferguson, County Attorney, and Michelle Wagner, Assistant County Attorney, for appellee.

**WATERMAN, Justice.**

In this appeal, we must decide whether the defendant, convicted of domestic abuse assault, third offense, under Iowa Code section 708.2A(4) (2015), is entitled to a new trial because his trial counsel failed to request a jury instruction defining "household member." The defendant argues the State failed to meet its burden to prove this "assault [was] between persons who have been . . . household members residing together within the past year" under sections 708.2A(4) and 236.2(2)(*d*). He spent several nights a week at the victim's home before their breakup without sharing expenses. The first trial ended in a hung jury. During deliberations in the second trial, the jury asked the court to "Define: Reside + Domestic" and was referred to their "ordinary meaning." Defense counsel never requested a jury instruction defining "household members," but moved for a judgment of acquittal based on the insufficiency of evidence on that issue, which the district court denied. The jury found the defendant guilty, and the court sentenced him to an indeterminate sentence of up to five years in prison. The defendant appealed, seeking to "vacate the domestic portion of his conviction"[1] or a new trial.

We transferred the defendant's appeal to the court of appeals, which affirmed his conviction over a dissent. The majority concluded defense counsel had breached an essential duty by failing to request the definitional instruction, but the defendant failed to show the prejudice required for a new trial because the State had presented sufficient evidence of cohabitation. The dissent concluded the evidence "was a

---

[1]Simple assault was submitted to the jury as a lesser included offense. The nondomestic assault conviction would have been a simple misdemeanor with a maximum jail sentence of thirty days. Iowa Code § 708.2(6); *id.* § 903.1.

toss-up" on that element and found the defendant established prejudice. We granted the defendant's application for further review.

On our review, we conclude the defendant met his burden to show he received ineffective assistance of counsel in district court. The central issue at trial was whether the defendant and victim had been cohabiting. The jury should have been given the definitional instruction, which accurately sets forth the factors bearing on that issue. Defense counsel's failure to request such an instruction was prejudicial, and defendant is entitled to a new trial.

## I. Background Facts and Proceedings.

The jury could find the following facts from the evidence at trial. The defendant, Eddie Virgil, and the victim, N.J., age twenty-three, began a romantic relationship in late 2013 that included sexual intimacy. N.J. was an unemployed mother living in a house in Waterloo with her four children, none fathered by Virgil. Virgil assaulted N.J. in May 2014. N.J. broke off her relationship with Virgil shortly thereafter. In August, Virgil again assaulted N.J. He was charged with a third assault in October, and his conviction on that charge is the subject of this appeal.[2]

During their eight-month relationship, Virgil spent three to four nights every week at N.J.'s rented home. He was not named on her lease or utilities and did not pay any rent or household expenses. When he stayed over, they ate meals together. He kept a cell phone and a garbage bag with some clothes at N.J.'s, but no other possessions. He kept the rest of his belongings at his uncle or cousin's home, where he stayed

---

[2]On September 12, Virgil pled guilty to assault causing bodily injury for the May offense and plead guilty to domestic abuse assault for the August offense. He did not testify at either jury trial for his October offense, and jurors were not informed about his guilty pleas or convictions.

three or four nights a week. He did not have a key to N.J's, but could come and go as he pleased. He was not allowed to have guests. He did not receive mail or phone calls at N.J.'s, but she believed he gave his family her address as his own. He typically arrived in the evening for supper and spent the night in her room. He would usually leave the next morning about nine or ten, after she walked one of her children to school. On most days, he provided child care. Although N.J. claimed they were not living together, she acknowledged saying that to avoid jeopardizing her section 8 housing subsidy, which prohibits nonfamily cohabitants.

Virgil assaulted N.J. the first time on May 14. N.J. told him he was no longer allowed to stay in her home, and their relationship ended by June. Virgil did not take it well. He assaulted her a second time on August 31. His third assault was on the morning of October 14. That day, N.J. walked her son to preschool a few blocks away. On her way home, Virgil confronted her, asking how she could do this to him and telling her he had no place to go. N.J. was frightened and walked faster to reach her doorway. He caught her and pushed inside, yelling at her. He struck her in the face, which bloodied her nose and blackened her left eye. He took her phone, threw it, and ran away. N.J. went to the hospital, where the police were called. Waterloo police officer Randy Hammitt took her statement and photographed her injuries.

The State charged Virgil with domestic abuse assault, third offense, in violation of Iowa Code section 708.2A(4), a class "D" felony. The case was tried to a jury on January 20–21, 2015. The marshaling instruction required the State to prove the assault occurred "between family or household members who resided together at the time of the incident or persons who have been family or household members

residing together within the past year but not residing together at the time of the incident."[3]  If that element was not proven, the instructions permitted the jury to convict him of simple assault.  Virgil did not request an instruction defining "household member," and the court did not give such an instruction.  The jury deadlocked with three voting to convict and nine to acquit.  The court declared a mistrial.

The case was tried to a second jury on March 31.  The State was unable to locate N.J.  The district court found N.J. unavailable and allowed her testimony from the first trial to be read into evidence.

N.J.'s testimony described the assault and her earlier living arrangements with Virgil.  The emergency room physician who examined N.J. testified her injuries were consistent with assault.  A friend testified Virgil had lived with N.J. in 2014, and N.J. had called her crying after Virgil assaulted her.  Officer Hammitt testified about N.J.'s statement given at the hospital, and the State admitted the photographs of N.J.'s injuries.  Virgil did not testify or call any witnesses.  At the close of

---

[3]The marshaling instruction stated,

The State must prove all of the following elements of the crime of Assault Domestic Abuse:

1. On or about the 14th day of October, 2014, the defendant did an act which was intended to cause pain or injury or result in physical contact which was insulting or offensive or place [N.J.] in fear of immediate physical contact which would have been painful, injurious, insulting or offensive to [N.J.]

2. The defendant had the apparent ability to do the act.

3. The act occurred between family or household members who resided together at the time of the incident or person who have been family or household members residing together within the past year but not residing together at the time of the incident.

If the State has proved all of these numbered elements, the defendant is guilty of Domestic Abuse Assault.  If the State has proved only elements 1 and 2, the defendant is guilty of Assault.  If the State has failed to prove either elements 1 or 2, the defendant is not guilty.

evidence, Virgil moved for a judgment of acquittal on grounds that the State had failed to prove "there was a domestic relationship" or that Virgil injured N.J. The district court denied the motion.

The marshaling instruction at the second trial was the same as the first. Again, no instruction defining household member was requested or given. During deliberation, the jury sent a note to the court, stating, "Define: Reside + Domestic." The court discussed the matter with counsel outside the presence of the jury:

> THE COURT: . . . There is no definition that I am aware of as to what reside means other than its common sense meaning. As far as domestic goes, I think the only instruction that I probably can do is to refer them to the marshaling instruction, numbered paragraph three, and they will have to go from there. What are your thoughts?

Both counsel stated they "agree[d]" with the court. The court therefore told the jury,

> The only advice we can give you on that would be reside has its common ordinary every day meaning, so you will have to resolve that issue as to whether the state has established by evidence beyond a reasonable doubt whether Mr. Virgil resided [with N.J.] or not. As far as domestic goes, the best definition we can give you is in the marshaling instruction, I believe that's [No.] 20, numbered paragraph 3[,] and you will have to make your determination on the basis of the evidence as to whether there has been a domestic relationship proven here by evidence beyond a reasonable doubt, domestic again being best defined by that numbered paragraph three, has the state proven one or the other of those matters.

The jury found Virgil guilty of domestic abuse assault. Virgil had two prior domestic assault convictions. The court sentenced him to an indeterminate term of up to five years in prison with a mandatory one-year minimum and a $750 fine. If he had been convicted only of the lesser included offense of simple assault, he would have faced only thirty days in jail. Iowa Code § 708.2(6), *id.*; § 903.1.

Virgil appealed. He raised several issues on direct appeal that had been preserved by counsel, including whether the district court properly ruled N.J. was unavailable, whether substantial evidence existed to determine N.J. and Virgil resided together, and whether the court erred by striking two prospective jurors for cause. Virgil's appellate counsel also raised an ineffective-assistance claim, arguing his trial counsel was ineffective for failing to request a jury instruction on the definition of "household member." Neither the State nor Virgil argued the record was inadequate to decide the ineffective-assistance claims such that it should be reserved for postconviction proceedings. And neither the State nor Virgil has argued that trial counsel could have made a strategic choice to refrain from requesting an instruction defining household member.

We transferred the case to the court of appeals. A three-judge panel affirmed Virgil's conviction. The panel unanimously affirmed the district court's ruling allowing N.J.'s testimony from the first trial based on her unavailability and the State's reasonable efforts to locate her, affirmed the ruling striking prospective jurors for cause, and rejected Virgil's claim the evidence was insufficient to support his conviction.[4] The panel unanimously concluded that counsel for Virgil had breached an essential duty by failing to request a jury instruction defining the term "household member." The majority, however, determined "Virgil is unable to establish prejudice" because the State presented sufficient

---

[4]In his pro se brief, Virgil raised ten additional claims, including claims of exculpatory evidence, his right of confrontation, improper introduction of evidence of his criminal history, improper stipulation to prior abuse convictions, ineffective assistance for failing to take depositions, improper jury instructions, prosecutorial misconduct, witness competency, jurors not being allowed to review evidence, and the denial of his motion for judgment of acquittal. Each of these claims was rejected by the court of appeals.

evidence of the domestic relationship.  The dissent opined that although "[t]he evidence was strong on the issues of identity and the assault[,] . . . it was a toss-up on the element of 'household member.' " The dissent found that prejudice resulted from counsel's failure to request an instruction defining the term.  We granted Virgil's application for further review.

## II.  Standard of Review.

"On further review, we can review any or all of the issues raised on appeal or limit our review to just those issues brought to our attention by the application for further review."  *Papillon v. Jones*, 892 N.W.2d 763, 769 (Iowa 2017) (quoting *Woods v. Young*, 732 N.W.2d 39, 40 (Iowa 2007)).  We elect to confine our review to Virgil's ineffective-assistance claim.  The court of appeals decision shall stand as the final decision on the other issues raised by Virgil.

"Generally, claims of ineffective assistance of counsel are preserved for postconviction relief proceedings."  *State v. Soboroff*, 798 N.W.2d 1, 8 (Iowa 2011).  But if "the record is adequate, we may resolve the claim on direct appeal."  *Id.*  We conclude the record here is adequate to address Virgil's ineffective-assistance claim.  Because ineffective-assistance claims are grounded in the Sixth Amendment and article I, section 9 of the Iowa Constitution, our review is de novo.  *See id.*

## III.  Analysis.

To establish ineffective assistance of counsel, Virgil must prove "by a preponderance of the evidence: (1) his counsel failed to perform an essential duty, and (2) prejudice resulted."  *Id.*  Virgil argues, and the court of appeals agreed, that counsel failed to perform an essential duty when he neglected to request a jury instruction defining "household member."  But the court of appeals majority determined Virgil had not

been prejudiced by counsel's error. Upon our de novo review, we disagree and conclude the resulting prejudice requires a new trial.

**A. Did Trial Counsel Fail to Perform an Essential Duty?** "An attorney fails to perform an essential duty when the attorney 'perform[s] below the standard demanded of a reasonably competent attorney.' " *Millam v. State*, 745 N.W.2d 719, 721 (Iowa 2008) (alteration in original) (quoting *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001)). We begin with the presumption the attorney performed competently, measuring performance against "prevailing professional norms" based on the totality of the circumstances. *Ledezma*, 626 N.W.2d at 142 (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2065 (1984)). "[I]neffective assistance is more likely to be established when the alleged actions or inactions of counsel are attributed to a lack of diligence as opposed to the exercise of judgment." *Id.* While miscalculated trial strategies or mistakes in judgment "normally do not rise to the level of ineffective assistance of counsel," "strategic decisions made after a 'less than complete investigation' must be based on reasonable professional judgments which support the particular level of investigation conducted." *Id.* at 143 (quoting *Strickland*, 466 U.S. at 690–91, 104 S. Ct. at 2066).

> In considering the breach-of-essential-duty element with respect to jury instructions, we have said that "not every right to insist that a particular instruction be given need be availed of by counsel in order to satisfy the standard of normal competency."

*State v. Broughton*, 450 N.W.2d 874, 876 (Iowa 1990) (quoting *State v. Blackford*, 335 N.W.2d 173, 178 (Iowa 1983)). Whether counsel breaches an essential duty by failing to offer or object to a particular instruction "must be determined with regard to the theory of defense which is being employed in the case." *Id.* "If the defense strategy is to deny that any

assaultive contact occurred, the individual elements of assault become unimportant." *State v. Fountain*, 786 N.W.2d 260, 267 (Iowa 2010). In other words, if the missing instruction would not have aided the defendant, counsel may not be ineffective for failing to correct or offer the instruction. *See id.* (declaring counsel not ineffective if defense was "simply that [the assault] did not occur" because "the distinction between a general intent instruction and a specific intent instruction may not have aided [defendant]").

Virgil's attorney failed to request a jury instruction defining "household member." Neither "household members" nor "residing" was defined for this jury. We have said that "[i]n criminal cases, the court is required to instruct the jury on the definition of the crime. Generally understood words of ordinary usage need not be defined; however, technical terms or legal terms of art must be explained." *State v. Kellogg*, 542 N.W.2d 514, 516 (Iowa 1996) (citation omitted); *see also* Iowa R. Civ. P. 1.924 (requiring the district court to "instruct the jury as to the law applicable to all material issues in the case"); Iowa R. Crim. P. 2.19(5)(*f*) ("The rules relating to the instruction of juries in civil cases shall apply to the trial of criminal cases."). "[T]he court is not required to give any particular form of an instruction; rather, the court must merely give instructions that fairly state the law as applied to the facts of the case." *State v. Marin*, 788 N.W.2d 833, 837 (Iowa 2010), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016).

Iowa Code section 708.2A defines a "domestic abuse assault" as an assault "which is domestic abuse as defined in section 236.2." Iowa Code § 708.2A(1). Chapter 236, known as the Domestic Abuse Act, in turn defines domestic abuse as an assault "between family or household

members who resided together at the time of the assault" or "family or household members residing together *within the past year* and are not residing together at the time of the assault."  Iowa Code § 236.2(2)(*a*), (*d*) (emphasis added).  The Act defines "*[f]amily or household members*" as "spouses, *persons cohabiting,* parents, or other persons related by consanguinity or affinity."  *Id.* § 236.2(4)(*a*) (second emphasis added).  The State had to prove Virgil and N.J. cohabited within a year preceding the alleged assault of October 14, 2014.

In *Kellogg*, we defined "cohabiting" under sections 236.2 and 708.2A.  542 N.W.2d at 517–18.  The central issue in that case was whether the defendant and victim were cohabiting.  *See id.* at 516.  Johanna Bunting and Francis Kellogg had lived together for about eight years.  *Id.* at 515.  They initially were lovers but "the physical or romantic component of their relationship ended."  *Id.*  They continued to live together in separate bedrooms under the same roof, sharing "financial responsibilities, appliances, and household duties."  *Id.*  Kellogg called police after a drunken altercation left Bunting injured.  *Id.*  He was charged with domestic abuse assault.  *Id.*  The court gave a jury instruction defining "household members" as "persons living together or cohabiting with each other under the same roof."  *Id.*  The defendant objected to the term "living together" as insufficient and requested an instruction that stated "living together as 'man and wife.' "  *Id.*  The court overruled his objection and declined his requested instruction.  *Id.*  During deliberations, the jury requested a "complete definition of cohabitation," and the court, over defendant's renewed objection, told the jury "cohabiting means dwelling or living together in the same place."  *Id.* at 515–16.  Kellogg was convicted and appealed.  *Id.* at 516.

We rejected Kellogg's argument that domestic abuse was limited to couples living together as husband and wife. *Id.* at 517 (noting that the legislature had broadened chapter 236 to protect against abuse "in a variety of significant relationships"). However, we concluded the district court's jury instruction, which encompassed mere roommates, was too broad. *Id.* at 518. We adopted the following nonexclusive factors to determine whether parties were cohabiting within the meaning of the Domestic Abuse Act:

1.  Sexual relations between the parties while sharing the same living quarters.
2.  Sharing of income or expenses.
3.  Joint use or ownership of property.
4.  Whether the parties hold themselves out as husband and wife.
5.  The continuity of the relationship.
6.  The length of the relationship.

*Id.* (quoting *People v. Holifield*, 252 Cal. Rptr. 729, 734 (Ct. App. 1988)). We made clear that whether two people were cohabiting is a question of fact for the jury. *Id.* We concluded the erroneous instruction prejudiced Kellogg and reversed and remanded the case for a new trial. *Id.*

The *Kellogg* factors can be outcome determinative. In *Kellogg*, we contrasted two cases addressing whether ex-wives cohabited with new boyfriends to trigger conditional relief for the ex-husband in the decree of dissolution. *Id.* at 517. *Compare In re Marriage of Gibson*, 320 N.W.2d 822, 822–23 (Iowa 1982) (finding no cohabitation when boyfriend stayed over four nights a week with a change of clothes, but had no key and maintained separate residence where he paid rent, kept his possessions, and received mail), *with In re Marriage of Harvey*, 466 N.W.2d 916, 917–18 (Iowa 1991) (finding cohabitation when boyfriend sublet his

apartment, stayed over three to four nights at the ex-wife's home, enjoyed free access, kept most possessions there, performed repairs, provided child care, and used her home as his address).

We reaffirmed the *Kellogg* factors in *Livingood v. Negrete*, when we rejected a claim that prison cell mates were "cohabiting" under the Domestic Abuse Act. 547 N.W.2d 196, 197 (Iowa 1996) (per curiam). We noted that cohabitation "cannot be legally established solely by proving that the defendant and victim were living together." *Id.* We concluded the Act did not apply to "nonvoluntary living arrangements such as prison cell mates," noting the latitude afforded prison administrators. *Id.* "From *Kellogg* we can . . . discern that cohabiting is more than simply living together, even though it is not tantamount to marriage." *State v. Mitchell*, 757 N.W.2d 431, 438 (Iowa 2008) (applying *Kellogg* factors under child endangerment statute when mother accused of cohabiting with sex offender).

The Domestic Abuse Act does not define "resides." *Root v. Toney*, 841 N.W.2d 83, 91 (Iowa 2013). "[R]esident . . . is an elastic word with varied statutory meanings, dependent upon the context of the statute in which it is used and the purpose and object to be attained." *Id.* at 90 (alternation in original) (quoting *Kroblin Refrigerated Xpress, Inc. v. Iowa Ins. Guar. Ass'n*, 461 N.W.2d 175, 177 (Iowa 1990)). The Act is intended to "protect Iowa residents from abuse." *Id.* at 91. To that end, we give the statute "a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it." *Id.* (quoting *Christenson v. Christenson*, 472 N.W.2d 279, 280 (Iowa 1991) (per curiam)).

The jury in *Kellogg* asked for help defining "cohabitation," just as Virgil's jury asked for help defining "reside." 542 N.W.2d at 515. Those terms have specialized meanings under the Domestic Abuse Act that

warrant definitional instructions to guide the jury. *See id.* at 516 (stating "technical terms or legal terms of art must be explained" to jury but ordinary words need not be defined). The dictionary defines "reside" as "to dwell permanently or continuously : have a settled abode for a time." *Reside, Webster's Third New International Dictionary* (unabr. ed. 2002). But we have clarified that under the Domestic Abuse Act, merely remaining in the same household is not sufficient; more is required to show a "significant relationship[]." *Kellogg,* 542 N.W.2d at 517. Simply referring the jury to the ordinary meaning of those terms was not enough. *See id.*; *State v. Hoffer*, 383 N.W.2d 543, 548 (Iowa 1986) (noting "[t]echnical terms or words of art that have a technical legal meaning, as distinguished from their ordinary meaning, should be defined" in the jury instructions).

The district court gave a marshaling instruction to set forth the elements of domestic abuse assault based on the Iowa State Bar Association Uniform Criminal Jury Instruction 830.4 (2015). But defense counsel failed to request, and the district court did not give, Uniform Instruction No. 830.5, which defines "household members" and "cohabiting," using the *Kellogg* factors."[5] Virgil argues his trial counsel

---

[5]The instruction states,

**830.5 Definition – Family Or Household Members.** The law defines "family or household members" as persons cohabiting with each other.

"Cohabiting" does not require a sexual relationship, but does require more than dwelling or living together in the same place. To determine if the defendant and (victim) were cohabiting at the time of the alleged offense, you may consider whether they had sexual relations while sharing the same living quarters; they shared income or expenses; they jointly used or owned property together; they held themselves out as husband and wife; the continuity and length of their relationship, and any other facts shown by the evidence bearing on their relationship with each other.

seemed to be unaware of *Kellogg* and Instruction No. 830.5. A lawyer defending domestic abuse charges should be aware of *Kellogg* and the readily available definitional instruction. *See State v. Vance*, 790 N.W.2d 775, 785–86 (Iowa 2010) (citing 16 Gregory C. Sisk & Mark S. Cady, *Iowa Practice Series™: Lawyer and Judicial Ethics* § 5:1(b), at 140 (2007) (discussing standards for a lawyer's preparation and analysis of precedent)).

We conclude that Virgil's trial counsel breached an essential duty by initially failing to request a jury instruction outlining the *Kellogg* factors and then again by failing to request such an instruction after the jury asked the court to define "Reside + Domestic." Importantly, no claim is made that Virgil's defense counsel had a strategic reason to refrain from requesting the definitional instruction. The key disputed factual issue was whether Virgil and N.J. cohabited within a year of the assault. An instruction defining "household member" under *Kellogg* should have been requested and given to the jury.

**B. Was Virgil Prejudiced by Counsel's Error?** The defendant is prejudiced when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ledezma*, 626 N.W.2d at 143 (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068). Specifically, the applicant must demonstrate that "absent the errors, the fact finder would have had a reasonable doubt respecting guilt" such that our

---

Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 830.5 (2015).

confidence in the outcome of the trial is undermined. *Id.* (quoting *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2068). "Unlike the situation in which error has been preserved and the court presumes prejudice," in ineffective-assistance claims, "it is the defendant's burden to demonstrate a reasonable probability of a different result." *Everett v. State*, 789 N.W.2d 151, 158 (Iowa 2010) (quoting *State v. Reynolds*, 746 N.W.2d 837, 845 (Iowa 2008)).

Defense counsel's failure to request a definitional instruction may be prejudicial even if the evidence is sufficient to support the conviction. *See Soboroff*, 798 N.W.2d at 8–9. Jeffrey Alan Soboroff was charged and convicted of making threats to contaminate a city's water supply with a psychotropic drug. *Id.* at 4–5. We rejected a claim that trial counsel had breached an essential duty by failing to move for a judgment of acquittal because we concluded there was "sufficient evidence for a reasonable jury to find" that the defendant had made a true threat. *Id.* at 9 (quoting *State v. Lane*, 743 N.W.2d 178, 183 (Iowa 2007)). Nonetheless, we determined counsel was ineffective for failing to request an instruction that defined "threat." *Id.* at 10. "While there was substantial evidence of a real threat, there was also evidence from which a jury could have concluded the Soboroff's statements were 'idle talk.'" *Id.* at 9 (quoting *State v. Milner*, 571 N.W.2d 7, 10 (Iowa 1997)). Had the jury been instructed on the standard for threats, "there [was] a reasonable probability the outcome of Soboroff's trial would have been different." *Id.*

We reach the same conclusion here. While there was sufficient evidence to find Virgil and N.J. cohabited, there was also evidence from which a jury could have concluded otherwise. The jury's question indicated that it was confused about the meaning of the terms "reside" and "domestic." *See Everett*, 789 N.W.2d at 159 (noting question from

jury can show confusion). Several of the *Kellogg* factors helped Virgil, and a jury instruction on those factors could have led the jury to acquit him. His relationship with N.J. lasted less than nine months, and they did not hold themselves out as husband and wife. Virgil never shared income or expenses with N.J., nor was he named on her lease or utilities. He was not allowed to have guests at her house. He only kept some clothes there in a garbage bag and spent several nights a week at his uncle or cousin's place, where he kept the rest of his possessions. A reasonable juror could find the State failed to prove cohabitation. *See Kellogg*, 542 N.W.2d at 518 (listing factors); *In re Marriage of Gibson*, 320 N.W.2d at 822–24 (finding lack of cohabitation under similar facts).

Virgil's first trial ended in a hung jury, with nine jurors voting to acquit. The evidence of cohabitation was not overwhelming. *See Ledezma*, 626 N.W.2d at 148–49 ("It becomes easier to doubt the fundamental fairness of a trial, and to question the reliability of the verdict, when the evidence by the State is not overwhelming . . . ."). We conclude there is a reasonable probability the outcome of the trial would have been different if the jury had been given a *Kellogg* instruction. Virgil has established *Strickland* prejudice requiring a new trial.

**IV. Disposition.**

For these reasons, we vacate the court of appeals decision as to the ineffective-assistance-of-counsel claims and affirm its decision on the other issues. We reverse Virgil's judgment and conviction and remand this case for a new trial consistent with this opinion.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED FOR NEW TRIAL.**