# IN THE COURT OF APPEALS OF IOWA

No. 17-0646
Filed April 4, 2018

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**NOEL JERMAINE BENDER,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Plymouth County, Steven J. Andreasen, Judge.

Noel Bender appeals his conviction of domestic abuse assault, third or subsequent offense, as an habitual offender. **AFFIRMED.**

Zachary S. Hindman of Mayne, Arneson, Hindman, Hisey & Daane, Sioux City, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Vaitheswaran and Bower, JJ.

**VAITHESWARAN, Judge.**

The State charged Noel Bender with domestic abuse assault, third or subsequent offense, as an habitual offender. *See* Iowa Code §§ 708.2A(1), 708.2A(4), 902.8, 902.9 (2015). A jury found him guilty, but this court reversed his judgment and sentence and remanded for a new trial. *See State v. Bender*, No. 15-1595, 2016 WL 6396227, at *3 (Iowa Ct. App. Oct. 26, 2016). On remand, Bender waived his right to a jury trial. Following a bench trial, the district court found Bender guilty and imposed judgment and sentence.

On appeal, Bender challenges the sufficiency of the evidence supporting the district court's finding of guilt. Our review of the district court's fact findings is for substantial evidence. *State v. Abbas*, 561 N.W.2d 72, 74 (Iowa 1997).

The district court set forth the elements of the crime as follows:

> 1. On or about April 28, 2015, in Plymouth County, Iowa, [Bender] did an act which was intended to:
>     a. Cause pain or injury to [the woman];
>     b. Result in physical contact which would be insulting or offensive to [the woman];
>     c. Place [the woman] in fear of immediate physical contact which would have been painful, injurious, insulting, or offensive to her.
> 2. [Bender] had the apparent ability to do the act.
> 3. The act occurred between household members who resided together at the time of the incident or between persons who have been household members residing together within the year prior to the incident but not residing together at the time of the incident.

Bender only challenges the "household member" element. The district court defined this element as follows:

> "Household members" are persons cohabiting with each other. "Cohabiting" does not require a sexual relationship; however, it does require more than dwelling or living together in the same place. To determine if [Bender] and [the woman] were cohabiting at the time of

the alleged offense or within the year prior, the Court considers whether they had sexual relations while sharing the same living quarters; whether they shared income or expenses; whether they jointly used or owned property together; whether they held themselves out as husband and wife, the continuity and length of their relationship, and any other facts shown by the evidence bearing on their relationship with each other. Although cohabiting does not have a specific definition, it is something more than persons just living together in the same place ("roommates") and something less than persons living together as spouses.

*See State v. Virgil*, 895 N.W.2d 873, 880 (Iowa 2017); *State v. Kellogg*, 542 N.W.2d 514, 517-18 (Iowa 1996).

The district court made detailed fact findings concerning this element, considering evidence detracting from a finding of cohabitation and including credibility findings where the evidence was conflicting. Preliminarily, the court found "[Bender] and [the woman] were engaged in sexual relations." But the court rejected Bender's assertion that the relationship was purely sexual. The court found: (1) Bender "was staying or otherwise living with [the woman] for at least three weeks, if not more"; (2) the two "were more than just roommates living together at the same place during this time"; (3) the couple was "developing a romantic relationship"; (4) Bender "also was developing a relationship with [the woman's] three children"; (5) Bender "did have . . . personal property items at the apartment," including "phone, tablet, and other such accessories; personal hygiene toiletry items; electronic cigarette/vaporizer items; and prior mail/documents"; (6) "[a]lthough it was not a 50/50 split, [Bender and the woman] also were essentially sharing expenses"; and (7) "there was no other place or location where [Bender] lived or resided." The court determined Bender "spent the majority of his time, including the majority of overnights, at [the woman's]

apartment from mid-February until the day of the assault on April 28, 2015, and was staying at the apartment continuously for approximately three weeks prior to and to the day of the assault." While the court acknowledged the living arrangement may not have been "permanent," the court stated permanency was not required.

The district court's fact findings are supported by substantial evidence. We affirm Bender's judgment and sentence.

**AFFIRMED.**