# IN THE COURT OF APPEALS OF IOWA

No. 18-0006
Filed September 12, 2018

**MIRANDA PETITHORY-METCALF,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Polk County, William P. Kelly, Judge.

Applicant appeals the district court decision denying her application for postconviction relief from her conviction for second-degree murder. **AFFIRMED.**

Gordon E. Allen, Johnston, for appellant.

Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee State.

Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

Miranda Petithory-Metcalf (Petithory) appeals the district court decision denying her application for postconviction relief from her conviction for second-degree murder. We conclude Petithory has not shown she received ineffective assistance due to defense counsel's strategic decision to withdraw a motion to suppress a videotape. We affirm the district court's decision denying Petithory's application for postconviction relief.

## I.       Background Facts & Proceedings

On November 28, 2013, Juan Carlos Chavarria got drunk and broke some bottles in the apartment he shared with Irvan Alfaro-Hernandez (Alfaro). Petithory, who was a friend of Alfaro's, came into the apartment and got mad, stating, "nobody disrespect this homie's apartment." Petithory confronted Chavarria and they began shouting at each other. Petithory told Chavarria, "You don't know me and you don't know what I'm capable of." Petithory stabbed Chavarria with a switch blade in front of several witnesses and he died as a result.

Petithory was given a ride to the police station in the vehicle of Officer David Cerne. A videotape (Videotape A) was made of Petithory as she sat in the back of the squad car. She told Officer Cerne she did not see what happened and was in the bedroom looking for her car keys at the time. She was crying during the drive. At the police station, Petithory was placed in an interview room by herself, where another videotape was made (Videotape B). She made several telephone calls.

Petithory was charged with first-degree murder for the stabbing death of Chavarria. She raised defenses of justification and intoxication. Petithory filed a

motion to suppress the two videotapes. The district court ruled Videotape A was not admissible because Petithory had not been informed of her *Miranda* rights at the time the statements were made. The court ruled the majority of Videotape B was admissible. During the trial, Petithory's two defense attorneys decided to withdraw the motion to suppress Videotape A and both videotapes were shown to the jury.

Petithory was convicted of murder in the second decree, in violation of Iowa Code section 707.3 (2013), a class "B" felony. Petithory's conviction was affirmed on appeal. *State v. Petithory-Metcalf*, No. 14-1478, 2016 WL 530241, at *10 (Iowa Ct. App. Feb. 10, 2016). The issue of whether Petithory received ineffective assistance when defense counsel withdrew the motion to suppress was preserved for possible postconviction proceedings. *Id.*

Petithory filed an application for postconviction relief on February 17, 2017, claiming she received ineffective assistance of counsel based on the withdrawal of the motion to suppress.

In a deposition, one of the defense attorneys stated the motion to suppress was withdrawn because the court had ruled Videotape B was admissible. The attorney testified, "The first statement that Miranda gave when she was in the police car, while she's crying and seems more sympathetic to the jury, the problem with that video [Videotape A] is she's lying about what happened." Concerning Videotape B, however, she stated Petithory seemed to be "a despicable person," "very unflattering," "very aggressive," and "used a lot of profanity." In Videotape B, Petithory "was just very aggressive and very confrontational. And she was not a likeable person." Defense counsel also testified:

So then our strategy was—which we discussed with Miranda—well, since the ugly part of you is coming in, we need to show another part of you that at least shows you in a somewhat favorable light, and that's when you're in the back of the police car.

But even though she's lying, at least she's crying, and she's upset, and hopefully she will be more sympathetic to the jurors. So we wanted the jurors to see another side.

If the tape that just shows her in the police station was the only tape that they saw, then that was the one that showed her in the most unfavorable light.

So it was a strategic decision that we made to at least let them see her in a more favorable light and to be crying.

Petithory's other defense counsel agreed with these statements. She testified about the decision to waive the motion to suppress as to Videotape A:

That then anything we could do to make her seem more sympathetic to the jury. When she was in Officer Cerne's car, although she was making statements that were untrue, she was very emotionally distraught. She was crying. She was acting more in line with what you would think someone who had been in a situation where someone had just been killed would act.

Defense counsel stated Petithory agreed to the strategy of withdrawing the motion to suppress.

The district court denied Petithory's application for postconviction relief. The court found, "The waiver of suppression was a tactical choice to allow [Petithory] to appear more sympathetic to the jury." The court determined defense counsel engaged in "a legitimate strategic action." The court also found Petithory was not prejudiced by the decision to show Videotape A to the jury—she made untruthful statements in both videos, so the impeachment value of Videotape A was "mostly duplicative of the station interview." Petithory now appeals the district court's decision.

## II.      Standard of Review

We conduct a de novo review of claims of ineffective assistance of counsel. *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008).  To establish a claim of ineffective assistance of counsel, an applicant must prove (1) counsel failed to perform an essential duty and (2) prejudice resulted to the extent it denied the defendant a fair trial.  *Id.*  An applicant's failure to prove either element by a preponderance of the evidence is fatal to a claim of ineffective assistance.  *State v. Polly*, 657 N.W.2d 462, 465 (Iowa 2003).

## III.      Ineffective Assistance

Petithory claims she received ineffective assistance because defense counsel withdrew her previously successful motion to suppress Videotape A.  She states the jury was permitted to hear statements made in violation of her constitutional rights because she had not been informed of her right against self-incrimination or her right to counsel before she made the statements.  Petithory claims she was prejudiced by the decision to withdraw the motion to suppress Videotape A because it contained some untruthful statements.  She states her defense—claiming she acted in self-defense—depended upon her credibility and the untrue statements in Videotape A weakened her credibility.

"Crafting a trial strategy is inherently difficult, so we 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."'"  *State v. Harrison*, 914 N.W.2d 178, 206 (Iowa 2018) (citations

omitted). In order to show ineffective assistance, an applicant must overcome this strong presumption. *State v. Coleman*, 907 N.W.2d 124, 141 (Iowa 2018).

"While miscalculated trial strategies or mistakes in judgment 'normally do not rise to the level of ineffective assistance of counsel,' 'strategic decisions made after a "less than complete investigation" must be based on reasonable professional judgments which support the particular level of investigation conducted.'" *State v. Virgil*, 895 N.W.2d 873, 879 (Iowa 2017) (citations omitted). Where there has been a thorough investigation of the law and facts, however, an attorney's strategic decisions "are virtually unchallengeable." *State v. Fountain*, 786 N.W.2d 260, 266 (Iowa 2010). "[W]e require more than a showing that trial strategy backfired or that another attorney would have prepared and tried the case somewhat differently." *State v. Gines*, 844 N.W.2d 437, 440–41 (Iowa 2014) (citation omitted).

We find Petithory has not overcome the strong presumption the conduct of her trial counsel "falls within the wide range of reasonable professional assistance." *See Harrison*, 914 N.W.2d at 206. The challenged action—withdrawing the motion to suppress Videotape A—could be considered sound trial strategy. *See id.* The district court ruled Videotape B was admissible. In this video, Petithory told several lies as she made telephone calls and exhibited a demeanor described as "very aggressive and very confrontational." In order to counteract the evidence in Videotape B, defense counsel made the decision to withdraw their opposition to the presentation of Videotape A, which also showed Petithory making untrue statements. Defense counsel made the strategic decision the presentation of Videotape A would not be unduly prejudicial and might be helpful because it

showed Petithory exhibiting a completely different demeanor. In order to support Petithory's claim she killed Chavarria in self-defense, her trial counsel wanted to show her in a more sympathetic light and felt this could be accomplished by showing Videotape A to the jury. A strategic decision of this nature is "virtually unchallengeable." *See Fountain*, 786 N.W.2d at 266.

We conclude Petithory has not shown she received ineffective assistance due to defense counsel's strategic decision to withdraw the motion to suppress Videotape A. We affirm the district court's decision denying Petithory's application for postconviction relief.

**AFFIRMED.**