# IN THE COURT OF APPEALS OF IOWA

No. 18-1419
Filed June 19, 2019

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**TRICIA ANN HANNEGREFS,**
　　　Defendant-Appellant.
_____

　　　Appeal from the Iowa District Court for Worth County, Rustin T. Davenport, Judge.


　　　A defendant appeals her conviction for driving while barred.  **REVERSED AND REMANDED.**


　　　Scott M. Wadding of Kemp & Sease, Des Moines, for appellant.

　　　Thomas J. Miller, Attorney General, and Richard Bennett, Assistant Attorney General, for appellee.


　　　Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**TABOR, Judge**

A jury convicted Tricia Hannegrefs of driving while barred, rejecting her compulsion defense. Hannegrefs contends her conviction must be reversed because the jurors were not instructed the State had the burden to disprove her claim she was compelled by her boyfriend to commit the driving offense. She argues her trial attorney's failure to object to the omission undermined her defense. Because we agree counsel breached a material duty by not challenging the flawed instructions and Hannegrefs was prejudiced, we reverse her conviction and remand for a new trial.

## I.      Facts and Prior Proceedings

Hannegrefs lived with Tim Abrahamson, her boyfriend of ten years. In September 2017, Abrahamson was fixing a motorcycle at the couple's home and decided to take it for a test drive. The bike broke down, forcing Abrahamson to walk back home. Hannegrefs recalled Abrahamson enlisting her help in picking up the motorcycle from the side of the road because "he couldn't drive the car and the bike." Knowing her license was barred, she nevertheless drove the car home at her boyfriend's insistence.

After the motorcycle excursion, according to Hannegrefs, Abrahamson continued to pressure her to drive because they were late picking up his mother from the hospital, where she was recovering from recent brain surgery.

> We had just gone to the motorcycle and were in a hurry to get down to Mom. And I know the car was almost dead on gas. And he just jumped in the passenger's side and said, "Let's go."
> I'm like, "I don't want to drive."
> He goes, "Let's go."
> I go, "I don't want to drive."
> And he's like, "You need to go. We have to go."

Tricia testified she succumbed to Abrahamson's pressure because of his past assaultive behavior:

> Q. Tricia, I don't want to embarrass you; but do you have difficulty sometimes with [Tim]?  A. There has been a . . . domestic assault on me once before back in—I forget what year it was, but yeah.
> Q. And so you've had experience with him actually assaulting you—  A. Yeah.
> Q. —although he did not do so on this day?  A. He hasn't ever since that one time; but yeah, he's done it once.
> Q. And so you were afraid he might do it again?  A. Yeah. When he gets angry, yeah.
> Q. And my understanding of your testimony is, is he actually put the car in drive while telling you to, "Go, go, go"?  A. Yeah.
> Q. Not listening to anything you might have—might have said?  A. He doesn't care if I have to sit in jail.  He doesn't care.

On cross examination, Tricia explained:

> Q. How did he overpower you, then?  A. Well, he—he started yelling at me to go, and I do not—I mean, he's a lot bigger than me; and I felt like I had no choice.
> Q. And were you standing beside the passenger door at the time?  A. No.  I was trying to get out of the driver's seat.
> Q. Well, there's a door, and he was in the passenger's seat, so he would have been on your right-hand side, and no one would have been obstructing you on your left-hand side to exit through the pass—or the driver's side door; correct?  A. When you have a man sitting here telling you to go and basically putting the car in drive and making you go, yeah.

Hannegrefs was nearing the gas station when Deputy Shayne Hoch recognized her in the driver's seat.  Believing Hannegrefs did not have a valid license, Deputy Hoch pulled her over.  Abrahamson was a passenger.  The deputy recalled Hannegrefs saying "she was going to get her—I'm not sure if she said 'mom' or 'mother-in-law.'  I'm not sure exactly, but . . . [Abrahamson]'s mom was in the hospital."

The State charged Hannegrefs with driving while barred in violation of Iowa Code section 321.561 (2017). She proceeded to a jury trial where she claimed she was compelled to drive by threat of injury from Abrahamson. The jury received this marshalling instruction:

INSTRUCTION NO. 14

The State must prove both the following elements of Driving While Barred:
(1)     That on or about September 23, 2017, the [d]efendant operated a motor vehicle in the State of Iowa.
(2)     At the time of operation of the vehicle, the defendant's privilege to operate a vehicle was barred as a habitual offender.
If the State has proved both of these elements, the defendant is guilty of Driving While Barred. If the State has failed to prove either of the elements, the defendant is not guilty of Driving While Barred.

Over the State's objection, the district court agreed Hannegrefs was entitled to have the jury instructed on her compulsion defense. The court provided this instruction:

INSTRUCTION NO. 15A

The defendant claims that at the time and place in question, she was acting under compulsion. When a person is compelled to act by another's threat of serious injury, and reasonably believes the injury is about to take place and can be avoided only by doing the act, then no crime has been committed.

On appeal, Hannegrefs argues trial counsel was ineffective for failing to object to these instructions because they did not communicate the State's burden to disprove Hannegrefs's compulsion defense beyond a reasonable doubt.

**II.     Standard of Review.**

Because claims of ineffective assistance of counsel are rooted in the Sixth Amendment of the United States Constitution and article I, section 10 of the Iowa Constitution, we review them de novo. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa

2006). To prevail on her ineffective-assistance claim, Hannegrefs must prove, by a preponderance of the evidence, (1) counsel failed to perform an essential duty, and (2) prejudice resulted. *See id.* While we often preserve ineffective-assistance claims for development in postconviction-relief proceedings, we may decide them on direct appeal when the record is adequate. *Id.* The record here permits us to address Hannegrefs's claim. *See State v. Harris*, 891 N.W.2d 182, 187 (Iowa 2017) (comprehending "no possible strategic reason for failing to object to the omission of the 'going' element" of going armed with intent).

### III.    Analysis.

The compulsion defense limits liability for an otherwise criminal act when a defendant is "compelled to [act] by another's threat or menace of serious injury, provided that the person reasonably believes such injury is imminent and can be averted only by the person doing such act." Iowa Code § 704.10. After a defendant generates a fact question on the compulsion defense, the burden shifts to the State to disprove the defense beyond a reasonable doubt. *State v. Walker*, 671 N.W.2d 30, 34 (Iowa Ct. App. 2003).

Because neither the marshaling instruction nor the compulsion-defense instruction explained the State's burden to the jury, Hannegrefs now argues her trial counsel was constitutionally remiss in not lodging an objection. On appeal, the State acknowledges the jury did not receive an explicit instruction on its burden of proof. But the State urges: "Counsel need not urge the giving of every possible instruction to display competency, even where an instruction would otherwise be available." *Brewer v. State*, 444 N.W.2d 77, 85 (Iowa 1989). In contrast to the instant case, *Brewer* addressed counsel's strategic decision not to request an

accomplice instruction.  Here, the State does not suggest, nor can we conceive of, a strategic reason for declining to object to the failure to instruct on the State's burden to disprove the only defense asserted (and thus, the central issue at trial).  *See State v. Virgil*, 895 N.W.2d 873, 882 (Iowa 2017) ("Importantly, no claim is made that Virgil's defense counsel had a strategic reason to refrain from requesting the definitional instruction.").

The State also contends defense counsel did not breach a material duty because she informed the jury during closing arguments it was the State's burden to disprove the compulsion defense.  In fact, defense counsel revisited that point three times:

> Now, the other jury instructions talked about the State's burden.  It is also the State's burden to convince you, beyond a reasonable doubt, that she did not act under . . . under compulsion to do so.
> So yes, you noticed I didn't ask Deputy Hoch a whole bunch of questions.  It's fair and obvious from the State's point of view.  That is, why are we here? Why are we here?  And they would have you believe that your time is being wasted, except for they have the burden to show you that she didn't act under compulsion.
>         . . . .
> And that's where we're at.  The State has the burden to prove, as in the instruction in 15A, that she was not acting under threat of serious injury, she was not acting—she was doing this of her own free will without any threats.  That's what the State has to prove.

But closing arguments cannot substitute for complete jury instructions.  *See Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 580 (Iowa 2017) ("Closing arguments 'generally carry less weight with a jury than do instructions from the court.  The former are usually billed in advance to the jury as matters of argument, not evidence and are likely viewed as the statements of advocates; the

latter . . . are viewed as definitive and binding statements of the law.'" (quoting *Boyde v. California*, 494 U.S. 370, 384 (1990))).

And even if defense counsel's summation could mitigate instructional error, in its rebuttal argument, the trial prosecutor exploited the omission of the burden of proof:

> Instruction No. 2 says, "Whenever I instruct you the State must prove something, it must be by evidence beyond a reasonable doubt." Well, we talked about the elements. Instruction No. 14 says, "The State must prove both of the following elements." We talked about 15A. It says, "The defendant claims." It doesn't say the State must prove. It can't prove a negative.
> [Defense counsel] talked to you before about the presumption of innocence in our jury voir dire. The whole point of the presumption of innocence is it's difficult to prove a negative.
> How do I prove that she didn't have a conversation with the deputy about her boyfriend? They didn't ask about any. It doesn't exist. I could play you a 45-minute CD—DVD, but how do I prove to you that something doesn't exist? Is it my obligation to do so?
> The defendant claims—This is the defendant who is claiming the compulsion.

The State's rebuttal illustrates why it would be unreasonable for defense counsel to rely upon closing arguments to clarify and cure instructions. While the jury heard defense counsel's accurate recitation of the burden of proof, the prosecutor had the last word. And here, the prosecutor used that opportunity to distort the burden of proof in the minds of the jurors, leaving defense counsel with no ability to respond. *See id.* ("Haskenhoff cites no case holding the fatal omission in the marshaling instruction could be cured by counsel during summation. To the contrary, Haskenhoff's counsel took advantage of the flawed jury instruction in her closing argument."); *see also State v. Clay*, 824 N.W.2d 488, 497–98 (Iowa 2012) ("A prosecutor can argue the law, but cannot instruct the jury on the law. When the prosecutor erroneously instructed the jury on the law, competent counsel

should have been aware of the well-settled legal principles establishing it is the province of the court to instruct the jury on the law.").

Once a defendant raises a viable compulsion defense, the burden returns to the State to disprove that defense beyond a reasonable doubt. *State v. Hibdon*, 505 N.W.2d 502, 504 (Iowa Ct. App. 1993). And the instructions must convey that burden to the jury. *See id.* at 505–06 (finding compulsion-defense instruction adequately informed jury of State's burden when it included the sentence: "Once the defense has been properly raised by the defendant, the state has the burden to disprove the defense beyond a reasonable doubt"). Iowa's uniform jury instructions provide this advice: "If the defense of compulsion is raised and supported by the evidence, it should be included in the marshaling instruction." Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 200.35 cmt. (Compulsion) (2018). We conclude counsel breached a material duty by not insisting the jury instructions convey the State's burden to disprove Hannegrefs's defense. *See State v. Ondayog*, 722 N.W.2d 778, 785 (Iowa 2006) ("[T]he failure to recognize an erroneous instruction and preserve error breaches an essential duty.").

Having found a breach of duty, we turn to the prejudice prong. The State again contends any risk of prejudice from the faulty instructions was mitigated by defense counsel's closing arguments. For the reasons discussed above, we reject this argument. *See Haskenhoff*, 897 N.W.2d at 580.

Next, the State urges us to find its evidence rebutting the compulsion defense more persuasive than Hannegrefs's trial testimony.[1] But our weighing of

---

[1] In particular, the State asserts Hannegrefs "offered no testimony that she felt threatened or that a failure to comply would result in harm from her boyfriend." But later in its prejudice

the evidence on appeal is not the measure of prejudice. Counsel's failure to request a proper instruction on the State's burden of proof may result in prejudice even if the record would permit us to find substantial evidence in support of Hannegrefs's conviction. *See State v. Virgil*, 895 N.W.2d 873, 882–83 (Iowa 2017) ("While there was sufficient evidence to find Virgil and N.J. cohabitated, there was also evidence from which a jury could have concluded otherwise.").

Hannegrefs's testimony presented sufficient evidence of a compulsion defense to raise a fact question for the jury. And the cold appellate record does not position us to assess witness credibility and act as fact finders. *See State v. Lawler*, 571 N.W.2d 486, 490 (Iowa 1997) ("To adopt the State's position would in substance discount or give no credibility to defendant's evidence and version of what happened and why it happened, thus precluding the jury's consideration of the crux of defendant's defense in this case. In essence, a refusal to give a requested jury instruction would be the equivalent of directing a verdict or granting a motion for summary judgment for the State on this issue."). Our confidence in the outcome of Hannegrefs's trial is undermined by the absence of an instruction on the State's burden to disprove her compulsion defense. We reverse and remand for a new trial.

**REVERSED AND REMANDED.**

---

argument, the State acknowledges Hannegrefs testified she feared her boyfriend would harm her if she refused to drive. The State discounts this testimony as "fall[ing] short of a credible compulsion offense." Finally, the State asserts its video exhibit of the police officer's roadside encounter with Hannegrefs conflicts with her testimony she told the deputy her boyfriend forced her to drive.