STATE of Iowa, Plaintiff–Appellee,

v.

James Walter CARTER, Defendant–Appellant.

No. 97–0200.

Court of Appeals of Iowa.

Feb. 25, 1998.

Joel W. Bittner, Altoona, for appellant.

Thomas J. Miller, Attorney General, Karen Doland, Assistant Attorney General, William R. Byers, County Attorney, and Wayne Reisetter, Assistant County Attorney, for appellee.

Considered by CADY, C.J., and SACKETT and VOGEL, JJ.

SACKETT, Judge.

Defendant-appellant James Walter Carter appeals his conviction of operating a motor vehicle while intoxicated. Defendant, who is hearing impaired, contends he did not knowingly and voluntarily waive his right to a qualified interpreter as provided under Iowa Code section 804.31 and that he was denied the right to call a family member. We affirm.

Defendant was stopped on July 17, 1996, by a state trooper who administered a breath test and, through gestures and notes, directed defendant to perform sobriety tests. Defendant was told by the trooper he would have an interpreter. Defendant was then arrested and taken to the Dallas County Sheriff's Office.

Defendant first contends he did not knowingly and voluntarily waive his right to an interpreter under Iowa Code section 804.31,[1]

---

1. 804.31. Arrest of deaf or hard-of-hearing person—use of interpreters—fee

    When a person is detained for questioning or arrested for an alleged violation of a law or ordinance and there is reason to believe that the person is deaf or hard-of-hearing, the peace officer making the arrest or taking the person into custody or any other officer detaining the person shall determine if the person is a deaf or hard-of-hearing person as defined in section 622B.1. If the officer so determines, the officer, at the earliest possible time and

which makes provisions for the use of interpreters when a person is deaf[2] or hard-of-hearing.[3]

The State argues defendant told the trooper from the beginning he did not want an interpreter and defendant knowingly and voluntarily waived his rights to an interpreter.

Defendant has impaired hearing. His speech also is impaired. The trooper stopping defendant testified he realized at once defendant's hearing was impaired. The trooper attempted to communicate by pointing, talking, writing, and asking defendant to read his lips, but determined defendant needed an interpreter. Defendant was cooperative. The trooper testified he asked defendant if he needed or wanted an interpreter and defendant shook his head "no." On the videotape, the trooper tells defendant he will get him an interpreter. The trooper later contacted the dispatcher to get one. Even later, the trooper asked the dispatcher if they had a list of interpreters for the hearing impaired.

Defendant was taken to the Dallas County jail and placed in a small holding cell. The cell had no direct overhead lighting. The only light entering the cell came through bars on two sides. After placing defendant in the cell, there is indication the trooper was looking for an interpreter before he left the room and returned saying, "Maybe we can get by." The trooper then showed defendant a paper through the cell bars, putting it in front of the bars. Defendant signed the paper outside the cell. Further conversation indicated at this point defendant had signed a waiver of his right to an interpreter.

prior to commencing any custodial interrogation of the person, shall procure a qualified interpreter in accordance with section 622B.2 and the rules adopted by the supreme court under section 622B.1 unless the deaf or hard-of-hearing person knowingly, voluntarily, and intelligently waives the right to an interpreter in writing by executing a form prescribed by the department of human rights and the Iowa county attorneys association. The interpreter shall interpret the officer's warnings of constitutional rights and protections and all other warnings, statements, and questions spoken or written by any officer, attorney, or other person present and all statements and questions communicated in sign language by the deaf or hard-of-hearing person.

This section does not prohibit the request for and administration of a preliminary breath screening test or the request for and administration of a chemical test of a body substance or substances under chapter 321J prior to the arrival of a qualified interpreter for a deaf or hard-of-hearing person who is believed to have committed a violation of section 321J.2. However, upon the arrival of the interpreter the officer who requested the chemical test shall explain through the interpreter the reason for the testing, the consequences of the person's consent or refusal, and the ramifications of the results of the test, if one was administered.

When an interpreter is not readily available and the deaf or hard-of-hearing person's identity is known, the person may be released by the law enforcement agency into the temporary custody of a reliable family member or other reliable person to await the arrival of the interpreter, if the person is eligible for release on bail and is not believed to be an immediate threat to the person's own safety or the safety of others.

An answer, statement, or admission, oral or written, made by a deaf or hard-of-hearing person in reply to a question of a law enforcement officer or any other person having a prosecutorial function in a criminal proceeding is not admissible in court and shall not be used against the deaf or hard-of-hearing person if that answer, statement, or admission was not made or elicited through a qualified interpreter, unless the deaf or hard-of-hearing person had waived the right to an interpreter pursuant to this section. In the event of a waiver and criminal proceeding, the court shall determine whether the waiver and any subsequent answer, statement, or admission made by the deaf or hard-of-hearing person were knowingly, voluntarily, and intelligently made.

Iowa Code § 804.31.

2. 622B.1. Definitions—rules

1. As used in this chapter, unless the context otherwise requires:

. . . .

b. "Deaf person" means an individual who uses sign language as the person's primary mode of communication and who may use interpreters to facilitate communication.

Iowa Code § 622B.1(1)(b).

3. 622B.1. Definitions—rules

1. As used in this chapter, unless the context otherwise requires:

. . . .

c. "Hard-of-hearing person" means an individual who is unable to hear and distinguish sounds within normal conversational range and who needs to use speechreading, assistive listening devices, or oral interpreters to facilitate communication.

Iowa Code § 622B.1(1)(c).

The waiver defendant signed was as follows:

I understand that I have the right to the presence of a qualified interpreter for the hearing impaired as defined in Iowa Code Chapter 622.B2 (1983) and the Rules of the Iowa Supreme Court, during any questioning.

I knowingly and voluntarily waive that right.

This waiver was made without any threat or coercion by any officer.

There is nothing to indicate the form used was approved by the Department of Human Rights and the Iowa County Attorneys Association. The State does not argue that it had been approved.

Defendant contends the waiver was not voluntary because he could not read the waiver because of his limited abilities and poor lighting. He contends he understood from the first paragraph of the waiver an interpreter would be available to him.

■ We first disagree with the State's argument the trooper's statement defendant shook his head "no" when asked if he wanted an interpreter has any bearing on the issue. The fact the trooper continued to seek an interpreter after the alleged "no" indicates the trooper failed to see it as a waiver. Even if defendant had shaken his head "no" when asked if he wanted an interpreter, this was insufficient to constitute a knowing and voluntary waiver of his rights under Iowa Code section 622B.2.

■ We next address the State's contention defendant voluntarily and knowingly waived his right to an interpreter in signing the presented waiver. Defendant at all times was extremely cooperative. The videotape shows the cell where defendant was held was poorly lighted. The trooper did not hand the waiver to defendant, but it was put in front of the cell and defendant signed it by putting his hand outside the cell. On the videotape, the officers at the Dallas County jail indicate their difficulty in communicating with defendant. There is no evidence of another type of communication to defendant at this point. There is no showing the waiver comported to the statutory requirement that it be a form prescribed by the Department of Human Rights and the Iowa County Attorneys Association. We do not find the State has shown defendant voluntarily and knowingly waived his right to an interpreter. However, the failure of the waiver does not impact on the admission of any breath screening tests or body substance test defendant was given. *See* Iowa Code § 804.31.

■ Defendant next contends he requested a call to his parents and it was refused. He advances the provisions of Iowa Code section 804.20[4] require he should have been permitted to make the call. An arrested person must be permitted to make a telephone call to an attorney or family member upon request when charged with a violation of chapter 321J, subject to certain limitations. *See Didonato v. Iowa Dep't of Transp.*, 456 N.W.2d 367, 371 (Iowa 1990); *State v. Vietor*, 261 N.W.2d 828, 832 (Iowa 1978).

The statute does not require an officer to tell the person he has the right; but when a request to make a phone call is made, the statutory purpose is not met if the officer stands mute and refuses the request. *Didonato*, 456 N.W.2d at 371.

■ It is undisputed defendant gave an officer his parents' phone number without other written instructions. The State advances it was given in response to booking questions rather than a request for consultation. We agree. While there is some confusion as to additional requests for counsel

---

4. 804.20. Communications by arrested persons

Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. Such person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney. If a call is made, it shall be made in the presence of the person having custody of the one arrested or restrained. If such person is intoxicated, or a person under eighteen years of age, the call may be made by the person having custody. Iowa Code § 804.20.

made by defendant, these requests were administered after the breath test and do not support suppressing it. Defendant has failed to show he made any statements to officers that prejudiced his cause.

**AFFIRMED.**