CLERK OF SUPREME COURT

NOV 09, 2016

ELECTRONICALLY FILED

# IN THE COURT OF APPEALS OF IOWA

No. 15-1543
Filed November 9, 2016

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**CARLOS ARIEL GOMEZ GARCIA,**
　　　　Defendant-Appellant.

_____

　　　　Appeal from the Iowa District Court for Muscatine County, Stuart P. Werling, Judge.

　　　　A defendant appeals his conviction for delivery of a controlled substance.

**REVERSED AND REMANDED FOR A NEW TRIAL.**

　　　　Courtney T. Wilson of Gomez May L.L.P., Davenport, for appellant.

　　　　Thomas J. Miller, Attorney General, and Kevin R. Cmelik and Louis S. Sloven, Assistant Attorneys General, for appellee.

　　　　Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

Carlos Ariel Gomez Garcia alleges he wanted a jury trial without the assistance of an interpreter and ended up with a bench trial with the assistance of an interpreter. Gomez Garcia appeals his conviction for cocaine delivery, raising two issues. First, he argues the district court should have granted his request to waive the services of an interpreter under Iowa Code section 622A.2 (2015) and Iowa Court Rule 47.3(1). Gomez Garcia contends the court's pretrial ruling requiring the proceedings be translated into Spanish prompted him to waive his right to a jury trial. Second, Gomez Garcia claims his trial counsel was ineffective for failing to assure his jury-trial waiver was knowing and voluntary, as required by Iowa Rule of Criminal Procedure 2.17(1).

Looking to the language of the statute and court rule, we conclude the district court erred in refusing to honor Gomez Garcia's knowing and voluntary waiver of an interpreter. The more difficult question is the appropriate remedy. For the reasons we discuss below, we find reversal of his conviction and remand for a new trial to be the only meaningful fix for the court's refusal to accept Gomez Garcia's expressed choice to decline interpreter services. Because we reverse on the interpreter issue, we do not reach his claim concerning counsel's performance in regard to the jury-trial waiver.

## I.     Facts and Prior Proceedings

The district court first appointed an interpreter to assist Gomez Garcia, a native of Honduras, at a bond-review hearing scheduled shortly after his arrest. Gomez Garcia told the court he needed an interpreter, and the court continued the hearing to facilitate his request. An interpreter provided assistance to Gomez

Garcia at the rescheduled bond-review hearing as well as the pretrial hearings that followed.

But Gomez Garcia did not want an interpreter at his jury trial. The parties met in the judge's chambers the morning of trial to discuss Gomez Garcia's request to waive the assistance of an interpreter. The district court excused the two Spanish-language interpreters from the room and directed the hearing to "proceed without an interpreter."

Defense counsel explained:

> [Gomez Garcia] would like to waive the . . . presence of the interpreters.[1] He doesn't need one. He speaks English and understands it perfectly. I've met with him numerous times, and we've never had an interpreter.
> An interpreter happened sort of spur of the moment during an initial bond review hearing, but we never had a hearing for whether that was actually needed, and [Gomez Garcia] has a real concern as to the danger of prejudice from having an interpreter present and interpreting everything for him.
> It's also confusing for him because he understands English, and so he's listening to the English and [is] then interrupted by someone speaking in his ear. He doesn't want that.
> . . . [H]e understands that he can have one if he wanted one, but he absolutely does not want one. So having one forced on him for a trial, in our view, would deprive him of a fair trial.

Noting it was "not aware of any authority" on a defendant's right to waive an interpreter, the district court likened the right to waive an interpreter to the right to waive counsel and resolved that Gomez Garcia needed to make an "affirmative showing" that he understood his right to an interpreter and could "exercise his right to a fair trial having waived that right."

---

[1] The court had appointed two interpreters for the trial. *See* Iowa Ct. R. 47.3(12)(b) (requiring the court to appoint more than one interpreter when "the court expects the interpreted event on a given day to be complex or to last more than four hours").

The court proceeded to question Gomez Garcia about his comprehension of the English language, including questions about his understanding of the criminal charge and evidence against him in the drug prosecution. Gomez Garcia, who was twenty-four years old and had been living in the United States for the past ten years, told the court he understood English and had no difficulty communicating with his attorney. Gomez Garcia told the court he completed the eleventh grade while living with a foster family in Michigan. He explained the foster family spoke to him in both Spanish and English "so I can pick it up." Gomez Garcia answered the court's questions about the criminal charges and potential penalty he faced, explaining he gained his understanding from reading the trial information and discovery materials provided by his attorney.

After a rather lengthy exchange, the court said it would "in part, grant the motion" by ordering the interpreters not "to be standing next to you and whispering in your ear . . . . But I am going to order that the interpreters be on standby." Under the court's "standby" plan, the interpreters would be present in the courtroom and would orally interpret throughout the trial, but they would not sit next to Gomez Garcia.[2] Instead, the interpreters would speak into microphones that transmitted to a wireless earpiece. Gomez Garcia could choose to either wear the earpiece or remove it. The court also told the parties it

---

[2] The court struggled to identify an inconspicuous place for the interpreters to sit. The court first suggested that the interpreters sit behind the State's counsel table, so the interpreters would not appear to be associated with Gomez Garcia. The assistant county attorney replied: "I will tell you that I can't do that. I would find that incredibly distracting to have someone standing right behind me speaking Spanish." The court ultimately decided to have the interpreters sit either in chairs to the right of the defense table or in a pew behind the defense table.

would give a limiting instruction to the jurors that "they are to make no assumptions based on the fact that an interpreter is present in the courtroom."

The court further explained its position: "I'm basing my ruling on the theory that it is the Court's duty to assure a fair trial. And in this case, I think a fair trial means I must have an interpreter available, at least on a standby basis."

Defense counsel pointed out the difference between standby counsel and standby interpreters:

> And I understand the similarity to having an attorney be on a standby basis, but in those cases, the attorney is silent and does nothing and just sits there. In this case, that is not how this will be. There is no way around it because they will be interpreting everything as we go. It is not the same thing as having the attorney just sit there silently who could just be a court observer.

In light of the court's ruling, defense counsel moved for a continuance to allow Gomez Garcia the chance to be tested on his English proficiency and then proceed without an interpreter. Defense counsel argued:

> The Court is forcing an interpreter or two interpreters here, and they're going to be speaking throughout the trial in Spanish. It's going to be obvious to everyone in the room why they're doing it, wherever they're located. It creates a possibility of unfair prejudice, and he doesn't need one. I mean, if he can understand me, then he can understand anybody who speaks English. The man had a job. He was working. He's navigating this country without interpreters. He doesn't need one here today. There is a real risk that that could be held against him, and there's simply no reason for it.

The State did not resist the defense motion to continue but did question "who we have do the [language proficiency] test and how quickly it could be done." The State added: "I don't want him not to have a fair trial."

The court denied the motion to continue, reasoning: "[W]e have a jury ready to go." The court reiterated that any remedy for Gomez Garcia's concerns

about juror attitudes would be "in jury instructions, if necessary." But the court rejected the notion that Gomez Garcia could show a sufficient level of language proficiency to justify waiving interpreter services.

> I don't know that any further testing will be of any particular use. I think we've established that the defendant has at least a base level of competency in the English language.
> The question is: What level of competency in English is sufficient to proceed without an interpreter? . . . Taking a test and giving me a result simply won't be. It's not legal guidance.

Before concluding the hearing, the court also considered Gomez Garcia's motion in limine, which sought to preclude the State from mentioning his criminal history. The State argued for the admissibility of a prior felony conviction for illegal re-entry into the United States. The court reserved ruling on admissibility, believing the motion would be "ripe" only if Gomez Garcia opted to testify at trial.

During the recess that followed this pretrial hearing, Gomez Garcia apparently waived his right to a jury trial. The record does not include a written jury-trial waiver, and the court reporter did not transcribe any in-court colloquy between Gomez Garcia and the district court. The transcript includes only the following parenthetical reference: "The defendant waived jury trial during recess, and the Court proceeded with bench trial."

At the bench trial, Gomez Garcia raised an entrapment defense, testifying the woman he was dating asked him to get cocaine for her and then turned out to be a confidential informant (CI) for the police. Following the bench trial, the court rejected the claim of entrapment, explaining:

> Neither Garcia nor [the CI] testified as to any statements or acts said or done by [the CI] to unduly persuade or entice Garcia into providing cocaine. Although the two had been lovers, Garcia rejected her as a potential parent due to her drug addiction and told

her so. It is clear their relationship was not a committed, loving relationship but was friends with benefits. Garcia testified his motivation for providing drugs was merely to maintain a friendship. There is no evidence Garcia was entrapped by anything [his girlfriend] said or did in order to entice him to provide drugs.

The court found Gomez Garcia guilty of delivery of a controlled substance in violation of Iowa Code section 124.401(1)(c)(2)(b).[3] Gomez Garcia challenges his conviction on appeal.

## II. Standard of Review

Gomez Garcia contends we review the district court's decision requiring interpreter services for an abuse of discretion. The State also argues an abuse-of-discretion standard is proper because the question is whether the district court had "a reasonable basis to believe" Gomez Garcia had "limited English proficiency." *See* Iowa Ct. R. 47.3(1); *see also* Iowa Ct. R. 47.1 (defining an "LEP person" as having "a limited ability to speak, read, write, or understand English because the person's primary language is not English").

We are skeptical that abuse of discretion is the proper standard here. We have previously found a defendant's claim the district court erred in refusing to appoint an interpreter under Iowa Code section 622A.2 raised questions of statutory construction, making our review for correction of legal error. *See State v. Afo-Odjebiti*, No. 05-1128, 2006 WL 3436473, at *1 (Iowa Ct. App. Nov. 30, 2006). Similarly, the instant claim draws into question the scope of the district

---

[3] In its written verdict, the court stated:
> Prior to the commencement of trial, the Court engaged in a colloquy with the defendant concerning his right to a jury trial and his waiver of the same. After engaging in a full colloquy, the Court finds the defendant knowingly, intelligently and voluntarily waives his right to a jury trial in this matter and consents to having this matter tried solely by the Court.

court's authority to impose an interpreter under section 622A.2. To the extent resolution of this appeal turns on the interpretation of that statute, our review is for legal error. *See State v. Wagner*, 596 N.W.2d 83, 85 (Iowa 1999).

### III. Analysis

In the early stages of his prosecution, Gomez Garcia requested language services. The district court in Muscatine County appropriately responded by appointing him an interpreter. *See* Standards for Language Access in Courts § 3.2, at 41 (Am. Bar Ass'n 2012) [hereinafter ABA Standards] ("Courts should allow an LEP person to self-identify as needing services. When an individual or his/her representative requests an interpreter, a judge . . . should presume the need is bona fide."); *see also United States ex rel. Negron v. New York*, 434 F.2d 386, 390 (2d Cir. 1970) ("Particularly inappropriate in this nation where many languages are spoken is a callousness to the crippling language handicap of a newcomer to its shores, whose life and freedom the state by its criminal processes chooses to put in jeopardy.").

On the eve of his jury trial, Gomez Garcia had a change of heart and sought to dispatch his interpreter—fearing potential juror bias against a defendant who did not speak English, as well as wanting to avoid the unnecessary noise and confusion associated with having an interpreter. To its credit, the district court was reluctant to leave Gomez Garcia without the language assistance he might need to understand what was happening at his trial and to be understood by the fact finder. *See* ABA Standards § 3.3, at 45 ("When an LEP person declines the use of or is hesitant to use an interpreter the judge should establish that the court can communicate with the LEP

person . . . ."). In the absence of any guidance in our statutes, rules, or case law on the procedure for waiving interpretation services, the district court aptly gravitated to the standard for waiving the right to counsel and discussed the requirement that Gomez Garcia make an "affirmative showing" he understood the right he was giving up and the implications for a fair trial if he was not assisted by an interpreter. *See id.* § 3.3, at 43 ("If the LEP person in this situation is attempting to decline the appointment of an interpreter; that request should be permitted only in documented circumstances similar to 'an intentional relinquishment or abandonment of a known right.'" (quoting *Negron*, 434 F.2d at 390)).

But the court's subsequent exchange with Gomez Garcia focused on his level of English proficiency and did not ultimately entertain the question of whether Gomez Garcia wished to intentionally relinquish his known right to an interpreter. The court acknowledged Gomez Garcia had a "base level of competency in the English language" but suggested that no proficiency testing results could provide the court with "legal guidance" regarding the propriety of waiving an interpreter.

On appeal, Gomez Garcia asserts that while an individual who does not understand English is entitled to an interpreter, "Iowa law does not require use of an interpreter where a party speaks another language, but is able to read and understand the English language." He contends the district court erred by requiring Spanish-language interpreters to provide services at his criminal trial after he had demonstrated his facility in English.

The State characterizes the district court's ruling as a "risk-averse approach," which sought "to avoid the possibility of making an erroneous decision *not* to retain interpreters by erring on the side of caution" and, therefore, to protect Gomez Garcia's right to a fair trial. The State contends this approach was reasonable since there exists no formal "English competency test" with legal significance that the district court could have used to ensure Gomez Garcia had a sufficient understanding of English.

Both the district court and the parties dwell on language proficiency, which *is* the critical consideration for appointment of an interpreter under section 622A.2 and rule 47.3(1).[4] But a criminal defendant's request to waive an interpreter calls into play different concerns. We start with the question of whether waiver is contemplated by Iowa's interpreter statutes and rules.

Iowa Code section 622A.2 states: "Every person who cannot speak or understand the English language and who is a party to any legal proceeding or a witness therein, shall be entitled to an interpreter to assist such person throughout the proceeding." Its companion court rule further provides: "When the court or court personnel have a reasonable basis to believe a person has limited English proficiency, unless the court determines that another reasonable accommodation is appropriate, the person qualifies for appointment of a court interpreter if the LEP person is a participant in a legal proceeding." Iowa Ct. R. 47.3(1).

---

[4] The district court and the parties seem to assume once there is a "reasonable basis" to believe a defendant has limited English proficiency, *see* Iowa Ct. R. 47.3(1), that defendant is *required* to have an interpreter unless he or she can prove an adequate level of expertise in the English language.

When interpreting statutes and rules, courts give words their plain and ordinary meaning. *See Doe v. Iowa Dep't of Human Servs.*, 786 N.W.2d 853, 858 (Iowa 2010). Both interpreter provisions employ terms suggesting the right to an interpreter can be waived.[5] Section 622A.2 states LEP persons are "entitled" to interpreters. "Entitle" means "to grant a legal right to or qualify for." *Black's Law Dictionary* (10th ed. 2014); *see also Ingalls Shipbuilding v. Dir.*, 519 U.S. 248, 256 (1997) ("Both in legal and general usage, the normal meaning of entitlement is a right or benefit for which a person qualifies. . . . It means only that the person satisfies the prerequisites attached to the right." (citation omitted)). Rule 47.3(1) uses the word "qualifies" as the basis for appointment. "Qualify" means, among other things, to "measure up to or meet a set standard or requirement." *Webster's Third New International Dictionary* (unabr. ed. 2002).

Both the statute and court rule indicate that once the court forms a reasonable belief a defendant has limited English proficiency, that defendant is entitled to or qualifies for an interpreter. Like other entitlements or benefits for which a criminal defendant qualifies, the statutory right to an interpreter may be

---

[5] We approach this analysis as an issue of statutory construction, but other jurisdictions have come to similar conclusions on the right to an interpreter and, conversely, the ability to waive that right, on state and federal constitutional grounds. *See, e.g.*, *People v. Aguilar*, 677 P.2d 1198, 1201, 1204 (Cal. 1984) (en banc) (recognizing state constitutional provision that "[a] person unable to understand English who is charged with a crime has a right to an interpreter throughout the proceedings" can be waived personally by defendant if waiver is intelligent and voluntary (emphasis omitted) (citation omitted)); *Tehrani v. State*, 764 So. 2d 895, 898 & n.1 (Fla. Dist. Ct. App. 2000) (recognizing defendant's constitutional right to an interpreter and to waive interpreter when no statute addressed defendant's right to interpreter but witnesses had statutory right that required court to appoint an interpreter when it determined a witness could not understand English); *State v. Rodriguez*, 682 A.2d 764, 770 (N.J. Super. Ct. Law Div. 1996) (likening waiver of interpreter to waiver of counsel and using framework of the Federal Court Interpreters Act to dictate the procedure); *Garcia v. State*, 149 S.W.3d 135, 145 (Tex. Crim. App. 2004) (requiring court to appoint an interpreter when aware defendant has difficulty understanding English unless defendant waives right).

waived.[6] *Cf. State v. Hinners*, 471 N.W.2d 841, 845 (Iowa 1991) (holding a defendant may waive the statutory right of appeal so long as the waiver is "voluntary, knowing, and intelligent"); *State v. Carter*, 577 N.W.2d 855, 857 (Iowa Ct. App. 1998) (recognizing ability of defendant to waive right to an interpreter under section 622B.2 as long as waiver is knowing and voluntary). Thus, the availability of waiver hinges not on Gomez Garcia's proficiency in the English language but on the knowing and voluntary nature of his affirmative request to forego interpretation services.[7]

To that end, the district court initially suggested the inquiry concerning Gomez Garcia's request to waive the interpreter should be "something akin" to a *Faretta* colloquy, which is required before a defendant may waive the right to counsel. *See Faretta v. California*, 422 U.S. 806, 835 (1975) (holding a defendant "need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, [but] he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open'" (citation omitted)). The court's initial instincts were sound. A *Faretta*-like colloquy for trial courts to determine if an LEP defendant is making a knowing and voluntary waiver of his or her right to interpretation services is

---

[6] Because the issue is not before us, we decline to consider whether a witness may waive the assistance of an interpreter.

[7] Other jurisdictions have qualified an individual's right to waive an interpreter by statute. *See, e.g.*, Wash. Rev. Code § 2.43.060(2) (2016) ("Waiver of a qualified interpreter may be set aside and an interpreter appointed, in the discretion of the appointing authority, at any time during the proceedings."); Wis. Stat. § 885.38(4) (2013–14 & Supp. 2016) (providing court "may accept" waiver of right to interpreter by a person with LEP as long as the waiver is knowing and voluntary and allowing individual to retract waiver for good cause at any time).

included in both the Federal Court Interpreters Act[8] and the ABA Standards.[9] But the district court did not proceed to conduct a colloquy to determine whether Gomez Garcia wished to relinquish a known right. The court did not explore Gomez Garcia's understanding of the right to an interpreter, nor did the court advise him of the pitfalls of standing trial without an interpreter. Instead, the court rejected Gomez Garcia's affirmative waiver request, requiring previously appointed interpreters to be "interpreting throughout the trial" and leaving it up to Gomez Garcia "whether or not he makes use of the earpiece."

We find the district court erred in not honoring Gomez Garcia's request to waive an interpreter. Several factors support the knowing and voluntary nature of his request. Gomez Garcia, along with his counsel, verbally communicated the intent to decline interpreter services; the attempted waiver was not passive or

---

[8] The Federal Court Interpreters Act provides:

> Any individual other than a witness who is entitled to interpretation . . . may waive such interpretation in whole or in part. Such a waiver shall be effective only if approved by the presiding judicial officer and made expressly by such individual on the record after opportunity to consult with counsel and after the presiding judicial officer has explained to such individual, utilizing the services of the most available certified interpreter, or when no certified interpreter is reasonably available, as determined by the presiding judicial officer, the services of an otherwise competent interpreter, the nature and effect of the waiver.

28 U.S.C. § 1827(f)(1).

[9] The ABA Standards advise:

> [T]he judge should establish that the court can communicate with the LEP person by determining through an interpreter on the record that:
> • The LEP person intentionally declined interpreter services through verbal communication rather than passively or through silence;
> • The LEP person knew that interpreter services were available;
> • The LEP person knew about the costs (if any) of interpreter services;
> • The LEP person was advised of the role of the interpreter, including the obligation of the interpreter to maintain confidentiality; and
> • The LEP person was aware of the advisability of communicating in one's native language.

ABA Standards § 3.3, at 45 (footnotes omitted).

through silence. *See State v. Neave*, 344 N.W.2d 181 (Wis. 1984) (finding defendant does not necessarily waive right to interpreter by failing to assert that right), *abrogated on other grounds by State v. Koch*, 499 N.W.2d 152 (Wis. 1993). Gomez Garcia knew interpreter services were available and knew the role of the interpreter because he had already made use of interpreters during pretrial proceedings.[10] While it would have been preferable for Gomez Garcia to personally affirm his preference to proceed without an interpreter, we can decipher from the hearing as a whole—as well as his appellate arguments with new counsel—that trial counsel accurately presented Gomez Garcia's desire to waive an interpreter. *See State v. Joseph*, 93 A.3d 1174, 1177–78 & 1178 n.7 (Conn. App. Ct. 2014) (finding no error when defendant was provided an interpreter to assist defendant in testifying and excused after counsel indicated defendant no longer needed the services and rejected defendant's argument he must personally waive the need for an interpreter). It would also have been better practice to use an interpreter during the waiver hearing, but it is clear from Gomez Garcia's responses to the court's questions that language proficiency was not a barrier to his knowing and voluntary waiver of an interpreter for his jury trial. *See* 28 U.S.C. § 1827(f)(1) (requiring judge to explain the nature of the waiver through an interpreter).

Having decided the court erred in denying Gomez Garcia's request to waive an interpreter, we turn to the thorny question of the proper remedy. Gomez Garcia contends he is entitled to a new trial because the district court's

---

[10] The form orders appointing interpreters filed herein included information about interpreter fees and the possibility those expenses would be taxed as court costs at the end of the case, but it is not clear that those orders were served on Gomez Garcia.

erroneous ruling prompted him to waive his right to a jury trial. According to Gomez Garcia, he believed the interpreter would be a distraction and, more importantly, he feared the jury would be biased against him for not speaking English. Gomez Garcia asserts he demonstrated that "apprehension and anxiety with regard to the prejudicial effect" using an interpreter could have on his case "by promptly waiving his right to a jury trial following the court's denial of his request to waive use of the interpreters."

The State responds with the Pollyannaish observation that it "cannot see why [Gomez Garcia] would fear that any juror would be biased against him based on the fact that he was receiving standby translation services." We take the more realistic position that jurors could harbor a bias toward non-English speakers.[11] In fact, the district court recognized the potential for bias by offering to give a limiting instruction to the jurors "that they are to make no assumptions based on the fact that an interpreter is present in the courtroom." The State further argues Gomez Garcia has failed to assert why a limiting instruction would not have been sufficient to mitigate any prejudice. The State contends Gomez

---

[11] *See, e.g.*, *State v. Acevedo*, No. 2 CA-CR 2008-0114, 2009 WL 2357163, at *5 (Ariz. Ct. App. July 31, 2009) ("The first juror said her impartiality would be affected if Acevedo was an illegal immigrant, and she was excused for cause. A second juror requested that the question be clarified and, after it was, stated that the use of a translator would not affect her decision . . . . A third juror approached the bench and asked if Acevedo was in the country legally; after being questioned, that juror was excused for cause."); *Rodriguez v. State*, No. 5271999, 2001 WL 58961, at *1 (Del. Jan. 18, 2001) (finding trial court's failure to ask about potential foreign language bias of jurors constituted error when two witnesses testified in Spanish with an interpreter); *State v. Medina*, No. 25732-1-III, 2008 WL 934075, at *9 (Wash. Ct. App. Apr. 8, 2008) ("Here, Jurors 9 and 11 admitted bias against individuals who do not speak English and live in the United States."); *see also Escobedo v. Lund*, 948 F. Supp. 2d 951, 990 n.15 (N.D. Iowa 2013) (recounting observations by an experienced federal district court judge that "anti-Hispanic bias" is a common problem among prospective jurors in cases involving Spanish-language interpreters), *rev'd in part*, 760 F.3d 863 (8th Cir. 2014).

Garcia must demonstrate the court's ruling compromised the fairness of his actual trial, not that he would have preserved his right to a jury trial but for the court's ruling. Because Gomez Garcia cannot show his bench trial was unfair, according to the State, any error in the court's ruling was harmless.

We decline to hold that Gomez Garcia's choice to waive a jury trial is the proper measure of prejudice here.[12] If we did so, then a defendant who similarly was denied the right to waive an interpreter but opted to go forward with a jury trial could not obtain relief. Moreover, if we accepted the State's position, it would be unlikely that a defendant who was erroneously denied the right to waive an interpreter could ever show the ruling impacted the ultimate outcome of the prosecution or compromised the fairness of a jury trial. *See State v. Wilson*, 878 N.W.2d 203, 210 (Iowa 2016) (explaining Iowa Rule of Evidence 5.606(b) prohibits court from considering juror affidavits addressing statements made during deliberations and the effect particular evidence had upon the minds of particular jurors); *see also Pena-Rodriguez v. People*, 350 P.3d 287, 291 (Colo. 2015) (holding rule forbidding inquiry into the validity of a jury verdict did not violate defendant's right to an impartial jury as applied to defendant who obtained juror affidavits stating that one juror had made racially biased statements against Hispanics during deliberations), *cert. granted sub nom. Pena-Rodriguez v. Colorado*, 136 S. Ct. 1513 (2016).

Instead, we believe the appointment of an interpreter for Gomez Garcia against his expressed desire to proceed without that assistance defies the

---

[12] It is not clear from the record whether the interpreter ruling was the sole reason Gomez Garcia opted to proceed with a bench trial; the jury-trial waiver also came close on the heels of the court's reservation of its ruling on the defense motion in limine.

normal standard of determining prejudice. *Cf. McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984) (explaining exercise of right to self-representation is "either respected or denied; its deprivation cannot be harmless"). Certain decisions, like whether to accept the assistance of counsel *or the assistance of an interpreter*, are left to the individual defendant, and those decisions—when made knowingly and voluntarily—must be honored out of "that respect for the individual which is the lifeblood of the law." *See Faretta*, 422 U.S. at 834 (quoting *Illinois v. Allen*, 397 U.S. 337, 350–51 (1970) (Brennan, J., concurring)); *see also United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006) (holding when right at stake is counsel of choice, that right is violated by an erroneous deprivation of counsel, even if the trial is otherwise fair). We realize the right of an LEP defendant to be assisted by or to waive an interpreter arises here from a statute,[13] while the right to counsel or self-representation is constitutional. But this statutory right reflects Gomez Garcia's individual choice regarding how his defense is conducted, and obtaining reversal for a violation of that right does not require a showing of prejudice because the aim is to protect that free choice, independent of concern for the objective fairness of the proceeding. Because the court did not honor Gomez Garcia's knowing and voluntary waiver request, we reverse and remand for a new trial.

      **REVERSED AND REMANDED FOR NEW TRIAL.**

---

[13] Our supreme court has framed the adequacy of translation services under section 622A.2 as implicating the constitutional right to a fair trial. *Thongvanh v. State*, 494 N.W.2d 679, 680–82 (Iowa 1993).



IOWA APPELLATE COURTS

State of Iowa Courts

**Case Number**          **Case Title**
15-1543                  State v. Gomez Garcia

Electronically signed on 2016-11-09 09:11:15