# IN THE COURT OF APPEALS OF IOWA

No. 17-1344
Filed July 18, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CARLTON G. VINSICK JR.,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Warren County, Kevin A. Parker, District Associate Judge.

Carlton Vinsick Jr. appeals his conviction, sentence, and judgment of forgery following a jury trial. **CONVICTION, SENTENCE, AND JUDGMENT VACATED AND CASE REMANDED FOR A NEW TRIAL.**

Mark C. Smith, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Zachary C. Miller, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

Following a jury trial, Carlton Vinsick Jr. was found guilty of forgery. He now appeals, challenging the sufficiency of the evidence to support his conviction and the effectiveness of his trial counsel's representation, among other things. Upon our review, we vacate Vinsick's conviction, judgment, and sentence, and we remand the case to the district court for a new trial.

### I. Background Facts and Proceedings.

On the morning of March 16, 2017, Indianola Police Officer Mesha Wagner was dispatched to Peoples Bank to respond to a call from the bank that a person in its drive-through was attempting to deposit a possible forged check. Upon arriving, Officer Wagner observed two men in a white van in the bank's drive-through lane. The driver and owner of the van was Joshua Carney. His passenger was Carlton Vinsick. Carney had presented a check from the Sports Page Grill, a local business, in the amount of $3150 for deposit in his savings account at the bank. Carney had endorsed the check on the back.

The owners of the Sports Page Grill told the officer an incomplete check had been left pinned to the bulletin board for business staff to tender to Doll Distributors, a vendor with a morning delivery scheduled, with "Doll" written in the "pay to the order of" line, as well as the date and the business owner's signature. The amount of the check was to be written in by staff after the delivery with the amount due to the vendor. The owners told the bank personnel and the officer the check was not supposed to be written to Carney or for that amount, and they did not know how Carney came to have the check. The business owned a 2002 red Chevy 1500 work truck that was generally used for "caterings and such."

Ultimately, Carney and Vinsick along with Tony Schmitt were each charged with forgery in connection with the check, in violation of Iowa Code sections 715A.2(1) and (2) (2017). The State's theory of the crime was that Schmitt, an employee of the cleaning company used by the Sports Page Grill, stole the check from the business while he was cleaning during the overnight hours of March 15 into March 16. After work the morning of March 16, Schmitt met with Carney and Vinsick at Vinsick's home, and the three conspired to forge the check for $3150 and divide the money between them. To that end, Carney drove to the bank with Vinsick to cash the check.

Carney and Vinsick were tried jointly. Officer Wagner testified that Carney gave a statement at the police station stating he had been given the check the morning of March 16 for working on a red truck while he was at Vinsick's home working on Vinsick's vehicle. In his statement, Carney explained that a friend of Vinsick's, whose name was either "Jeff or Tony" and who worked at the Sports Page Grill, had stopped by Vinsick's house while Carney was there. In addition to "Jeff or Tony," there was another guy named "Charlie or Craig" that "had a Red Chevy 1/2 Ton Pickup [and] said he worked at the Sports Page with this Jeff . . . . [H]e had his upper intake [and] EGR valve clogged with Carbon." "Charlie or Craig" asked how much Carney would

> charge to work on his truck. At first [Carney] told him that [he] really didn't have the time but he offered to pay [Carney] well . . . . [Carney] thought all of those guy[s knew] each other so [he] agreed to help this Craig or Charlie . . . . [H]e said he [would pay Carney] double if [he] could save him the trouble of paying a shop their rates. [H]e couldn't pass it up so [he] did it [and] this Craig or Charlie wrote [him] the check[,] shook [his] hand saying [Carney] saved him approximately $1800 [and] time compared to a shop . . . . When this Jeff came back [to Vinsick's after] working [Carney] told him about

> the guy with the Chevy 1/2 Ton because he was giving [Carney] crap about [Vinsick's] truck [and] how it looked the same. [Carney] shoved him . . . [and Vinsick] came [outside and Carney] showed [Vinsick] the amount on the check [and Vinsick] said I don't blame you. I wouldn't have passed that up either. So as soon as the bank opened [Carney] went to cash the check and had this [officer] questioning where [Carney] got it [and] who gave it to [him].

Carney described "Charlie or Craig" as being five foot six to five foot eight inches tall, with dark hair and a goatee. Carney indicated that "Charlie or Craig" was at Vinsick's home the same time as "Jeff or Tony."

Officer Wagner talked to one of the business's owners and connected "Tony" to the cleaner, Tony Schmitt. The officer obtained a copy of Schmitt's license photo and showed it to Carney, and Carney "made a positive ID." Officer Wagner confirmed that Carney was "sure this [was] the gentleman that gave [him] the check," and Carney said, "Yes, that's it. That's the gentleman." The officer then told Carney the picture was of Schmitt, and Carney "backtracked and said, 'Well, I don't think that's him. The gentleman that was here this morning with the truck had a hat on, so [Carney] really [did not] know if that [was] him.'"

Officer Wagner asked Vinsick about the mystery man in a red pickup truck, and Vinsick reiterated a dark haired man with a goatee and a red truck had been at Vinsick's residence that morning, but Vinsick did not know the person. The officer also talked to Schmitt, who told her he had been at Vinsick's home that morning "after he had cleaned the Sports Page and was there for approximately a half hour and left." Schmitt told the officer he had not seen anyone in a red pickup truck that morning or the check that was allegedly given to Carney. The officer talked to Carney again, and Carney "changed his story . . . and said that, well, he didn't know if [red-truck man and Schmitt] were [at Vinsick's] at the same time, but

he did . . . recall that Mr. Schmitt was there when he was working on the red pickup truck." Carney also told Officer Wagner he had shown the check to Schmitt.

Carney testified he was at Vinsick's house to work on Vinsick's truck on March 15, 2017, and while he was there, he met Vinsick's acquaintance Schmitt for the first time. Around 9 p.m., a man in a red truck "showed up" and told Carney he worked with Schmitt at the Sports Page Grill and was referred to Carney by Schmitt. At that time, neither Vinsick nor Schmitt were at Vinsick's house. The man told Carney he would pay him "extra well if [Carney] could get it fixed and have it done that night." Carney testified he finished working on the truck after five or six hours, and the man returned that morning. The man started his truck and could tell "it sounded better." The man "went to his pickup truck and he acted out like he was writing out a check. He was standing there with the door open, and he comes out, and he shook [Carney's] hand, and he handed [him] this check." Carney testified he looked at the check and saw his name on it, but it was dark out and he "couldn't really read it." He did see the amount written on the check, and he "was kind of flabbergasted, you know. [He] didn't know what to think, because he said he would pay [Carney] extra well if [he] got it fixed that night. And [he] didn't think it was going to be that well, but [he] accepted it" and took it to the bank. Carney testified he did not ask the man for identification because he "trusted, you know. It was at [Vinsick's] house. [He] trusted that they were his—he knew [Schmitt], you know, and this guy said that he worked with [Schmitt] . . . . [He] just took for granted that, you know—[he] assumed that [Vinsick] knew who they were." Carney testified Vinsick saw the red truck, but Schmitt was not there when the owner of the red truck was there. He testified he had tried to explain to Officer

Wagner he had shown Schmitt the check but Schmitt had not been there when the check was given to Carney. He also denied identifying Schmitt as the man in the red truck to Officer Wagner. Carney testified that Vinsick did not hand him the check, and he stated Vinsick only went to the bank with him because he needed directions to the bank.

Vinsick did not testify. After the matter was submitted to the jury, the jury found Carney and Vinsick both guilty of forgery as charged. Vinsick now appeals.

## II. Discussion.

On appeal, Vinsick argues: (1) the evidence was insufficient to support his conviction; (2) his trial counsel rendered ineffective assistance in failing to object to the allegedly lacking specific-intent jury instruction; (3) the district court erred in its denial of his posttrial motion because it applied the wrong standard; and (4) the court erred when it required that he divulge his passwords to his social-media accounts as a condition of probation without a related nexus. The State concedes error relating to the last two issues, and it asserts a limited remand is warranted. However, the State maintains the evidence of Vinsick's guilt was overwhelming to support his conviction and to overcome any prejudice he would have sustained by his trial counsel's failure to object to the challenged jury instruction. Notably, if we find the evidence was insufficient to support his conviction, Vinsick would be entitled to an acquittal on the charge and double jeopardy would bar retrial; the remaining issues would be moot. *See United States v. Gonzalez-Sanchez*, 825 F.2d 572, 588 n.56 (1st Cir. 1987) ("The double jeopardy clause does not prevent the retrial of a defendant after his conviction has been reversed on appeal unless the reversal was grounded on the insufficiency of the evidence at trial . . . . Even

if the appellate court finds alternative grounds for reversal, it must consider the defendant's challenge to this sufficiency of the evidence to ensure that the prohibition against double jeopardy is upheld."); *State v. Wadsworth*, No. 16-1775, 2018 WL 2230666, at *1 (Iowa Ct. App. May 16, 2018) (citing *Gonzalez-Sanchez*, 825 F.2d at 588 n.56). We therefore address his arguments in turn, beginning with the sufficiency-of-the-evidence claim.

### A. *Sufficiency of the Evidence.*

Vinsick first argues the evidence was insufficient to support his conviction of forgery. Our review of the issue is for corrections of errors at law. *See State v. Coleman*, 907 N.W.2d 124, 134 (Iowa 2018). We consider the record evidence in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. *See State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017). We will uphold the trial court's denial of a motion for judgment of acquittal if substantial evidence supports the conviction. *See State v. Harris*, 892 N.W.2d 182, 186 (Iowa 2017). "Evidence is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Henderson*, 908 N.W.2d 868, 875 (Iowa 2018). Evidence is not substantial if it raises only suspicion, speculation, or conjecture. *See Huser*, 894 N.W.2d at 490.

The jury was instructed that Vinsick was guilty of forgery if the State proved: (1) On or about March 16, 2017, Vinsick uttered a check that Vinsick knew had been altered without the permission of the Sports Page Grill, and (2) Vinsick specifically intended to defraud or injure the Sports Page Grill. The instructions explained "[a] person utters a writing when he offers it to another and represents it as genuine," and the instructions defined "alter" as "to change or modify an existing

document."  There was no evidence presented that Vinsick uttered the Sports Page Grill check; there was nothing demonstrating he offered the check to another or represented the check as genuine to anyone.  Consequently, the State had to establish Vinsick aided or abetted Carney in the crime of forgery for Vinsick to be guilty of forgery.

> To sustain a conviction on the theory of aiding and abetting, the record must contain substantial evidence the accused assented to or lent countenance and approval to the criminal act either by active participation or by some manner encouraging it prior to or at the time of its commission.  The State must prove the accused knew of the crime at the time of or before its commission.  However, such proof need not be established by direct proof, it may be either direct or circumstantial.
> Neither knowledge of the crime nor proximity to the crime scene are enough to prove aiding and abetting.  However, they are factors, which with circumstantial evidence such as "presence, companionship, and conduct before and after the offense is committed," may be enough to infer a defendant's participation in the crime.  When, as here, intent is an element of the crime charged, a person may be convicted on a theory of aiding and abetting if [he] participates with either the requisite intent, or with knowledge the principal possesses the required intent.

*State v. Tangie*, 616 N.W.2d 564, 574 (Iowa 2000) (internal citations omitted).  Yet, intent can seldom be proved by direct evidence.  *See State v. Furlong*, 249 N.W. 132, 134 (Iowa 1933).  Consequently, proof of intent usually arises from circumstantial evidence and inferences reasonably drawn from the circumstances.  *See State v. Olson*, 373 N.W.2d 135, 136 (Iowa 1985); *see also Henderson*, 908 N.W.2d at 878 (finding the circumstantial evidence presented insufficient to establish Henderson knew a gun would be used in the robbery).

The State maintains there was "overwhelming evidence to prove Vinsick had the intent required to aid and abet a forgery."  The State first points out that Carney stated at the police station he showed the check to Vinsick, and the State

goes on to characterize the check as one "which had obviously been altered." We disagree with the State's characterization. "In making our assessment of the sufficiency of the evidence, we are obliged to consider all the evidence, not just the evidence supporting the verdict." *State v. Sutton*, 636 N.W.2d 107, 113 (Iowa 2001). The exhibit which, for purposes of reproduction here, we have watermarked as "*void*" and from which we have redacted sensitive information, appears as follows in our record:



One of the owners testified she viewed the original check, and it was "a lot more clear" on the original check (than the court exhibit she was viewing at the time—a photocopy of the original check) that the check had originally said "Doll" in the "pay to the order of" line. She also testified she believed the date had been altered but also looked as if "it could have been a change on the manager's part . . . . [M]aybe a mess-up on the handwriting or something." Officer Wagner testified that on the original check, the "name of Josh Carney ha[d] been altered. It's in darker writing, and it also appear[ed] to be in a different color of some sort or definitely written over extremely thick from what was originally written on the

check." But looking at a scanned copy of the check,[1] and given the testimony of the owner, even if it can be said the check was "altered," meaning the existing document was changed or modified, we do not think it is so obviously altered that Vinsick, upon viewing it, must have known it was altered "without the permission of the Sports Page [Grill]."

The State also points out that Vinsick and Carney were friends and that Vinsick was with Carney "before, while, and after Carney passed the forged check." The State also asserts "Vinsick directed Carney to the Peoples Bank where Carney uttered the check," and, "[h]ad Vinsick not been aiding and abetting Carney, he could have given Carney simple directions to the bank," which was only a few blocks from Vinsick's home. Finally, the State contends Vinsick's statement that "he had seen Carney with a red truck at [his] house . . . corroborated Carney's dubious explanation of where he got the check," which was the "lynchpin of Carney's explanation."

This is an extremely close call. We do not think there was overwhelming evidence of Vinsick's guilt of aiding and abetting Carney in forgery, but that is not the standard here. Considering the evidence in the light most favorable to the State, particularly all of the reasonable inferences that may be fairly drawn from the evidence, substantial evidence supports the conviction. Vinsick's corroboration of seeing a red truck, along with his connection to Schmitt, Schmitt's and Carney's meeting at his house, and Vinsick's proximity to Carney during and

---

[1] Inexplicably, the original check, exhibit 3, was not furnished to this court. A black and white scanned copy of the exhibit is contained within the "Trial Court Binder," the electronic trial court record specially prepared for the appellate court.

after Carney attempted to pass the forged check permitted the jury to reasonably infer Vinsick either participated in the actual forgery or at least with the knowledge Carney was engaging in the crime of forgery. In fact, the jury heard this evidence and was convinced Vinsick was guilty beyond a reasonable doubt. There was sufficient evidence to support Vinsick's conviction.

### B. Specific Intent Jury Instruction.

Vinsick also contends his trial counsel was ineffective in failing to challenge the aiding and abetting specific-intent jury instruction given by the court. Generally, we preserve claims of ineffective assistance of counsel for postconviction-relief proceedings to allow the record to be developed on various issues. *See State v. Gomez Garcia*, 904 N.W.2d 172, 186 (Iowa 2017); *State v. Virgil*, 895 N.W.2d 873, 879 (Iowa 2017). However, we may resolve the claim on direct appeal if the record before us is adequate. *Virgil*, 895 N.W.2d at 879. We find this record adequate.

We review ineffective-assistance claims de novo. *See Henderson*, 908 N.W.2d at 874. In order to establish ineffective assistance of counsel, Vinsick must show by a preponderance of the evidence that his trial counsel failed to perform an essential duty and that failure prejudiced him. *See Coleman*, 907 N.W.2d at 141. Because both elements must be proven by a preponderance of the evidence, failure to prove either breach or prejudice means the ineffective-assistance-of-counsel claim must fail. *See Gomez Garcia*, 904 N.W.2d at 185.

Forgery is a specific intent crime. *See* Iowa Code § 715A.2(1), *see also Diaz v. State*, 896 N.W.2d 723, 733 (Iowa 2017). Moreover, under an aiding-and-abetting theory of the crime, "the defendant must have 'knowingly aided the principal' in committing the crime." *Henderson*, 908 N.W.2d at 876 (quoting *State*

*v. Satern*, 516 N.W.2d 839, 843 (Iowa 1994)). Iowa Criminal Jury Instruction 200.8, published by the Iowa State Bar Association, suggests the following instruction for "aiding and abetting":

> "Aid and abet" means to knowingly approve and agree to the commission of a crime, either by active participation in it or by knowingly advising or encouraging the act in some way before or when it is committed. Conduct following the crime may be considered only as it may tend to prove the defendant's earlier participation. Mere nearness to, or presence at, the scene of the crime, without more evidence, is not "aiding and abetting". Likewise, mere knowledge of the crime is not enough to prove "aiding and abetting".
>
> The guilt of a person who knowingly aids and abets the commission of a crime must be determined only on the facts which show the part [he] [she] has in it, and does not depend upon the degree of another person's guilt. If you find the State has proved the defendant directly committed the crime, or knowingly "aided and abetted" other person(s) in the commission of the crime, then the defendant is guilty of the crime charged.

The comment to the instruction further notes:

> Add the following paragraph if the offense involves specific intent: "The crime charged requires a specific intent. Therefore, before you can find the defendant "aided and abetted" the commission of the crime, the State must prove the defendant either has such specific intent or "aided and abetted" with the knowledge the others who directly committed the crime had such specific intent. If the defendant did not have the specific intent, or knowledge the others had such specific intent, [he] [she] is not guilty.".

Iowa Crim. Jury Instructions 200.8.

Despite the offense involving specific intent, the district court's instruction did not include the additional paragraph, and Vinsick's trial counsel did not object to the instruction's incompleteness. The State concedes the omitted paragraph should have been included in the instruction and states that Vinsick's trial counsel's "failure to request this paragraph probably constitutes a breach of duty." However, the State hangs its hat on the prejudice prong, insisting Vinsick "cannot show

prejudice because evidence of his guilt overwhelmed" and citing cases of this court finding no prejudice in failing to challenge the lacking instruction because of overwhelming evidence of the defendant's guilt. *See, e.g.*, *State v. Bergstrom*, No. 13-0144, 2014 WL 956068, at \*4-5 (Iowa Ct. App. Mar. 12, 2014) (concluding there was "overwhelming evidence supporting each of the elements of the offense, including the requisite specific intent," such as "the surveillance footage showed Bergstrom actively participated in the theft"); *Houston v. State*, No. 05-1591, 2007 WL 254543, at \*5 (Iowa Ct. App. Jan. 31, 2007) (finding overwhelming evidence that "Houston aided and abetted others in the kidnapping with the knowledge that one or more of principals had the necessary specific intent"). For the reasons stated in the foregoing section, we do not agree there was overwhelming evidence of Vinsick's intentions.

> The defendant is prejudiced when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Specifically, the [defendant] must demonstrate that "absent the errors, the fact finder would have had a reasonable doubt respecting guilt" such that our confidence in the outcome of the trial is undermined. "Unlike the situation in which error has been preserved and the court presumes prejudice," in ineffective-assistance claims, "it is the defendant's burden to demonstrate a reasonable probability of a different result."

*Virgil*, 895 N.W.2d at 882 (internal citations omitted).

Upon our de novo review, we believe trial counsel breached an essential duty in not objecting to the absence of this paragraph, and the breach resulted in prejudice to Vinsick. To be sure, as we suggested before, rational jurors could have inferred Vinsick's specific intent to participate in the forgery or that he knowingly advised or encouraged the act in some way before or when it was

committed. Nevertheless, that is not the only fair inference available from the evidence. Reasonable jurors also could have rejected such an inference and found that although Vinsick may have known Carney was engaging in the crime of forgery, Vinsick never participated, advised, or encouraged Carney to act or otherwise commit forgery. *See also State v. Burton*, No. 12-2223, 2013 WL 5760635, at *5 (Iowa App. Oct. 23, 2013). Simply put, a reasonable juror could find the State failed to prove Vinsick had the necessary intent. Given the State's limited circumstantial evidence, the full instruction would have offered the jurors clear guidance regarding the State's burden to prove specific intent in an aiding-and-abetting scenario. We must conclude there is a reasonable probability the outcome of the trial would have been different if the jury had been given the full instruction. *See Ledezma v. State*, 626 N.W.2d 134, 148-49 (Iowa 2001) ("It becomes easier to doubt the fundamental fairness of a trial, and to question the reliability of the verdict, when the evidence by the State is not overwhelming . . . ."); *see also Virgil*, 895 N.W.2d at 883 (citing *Ledezma*, 626 N.W.2d at 148-49).

Because the State agrees Vinsick's trial counsel's failure to object to the instruction's omitted paragraph constituted a breach of his duty, and we find Vinsick established prejudice resulted from the breach, we conclude Vinsick established his counsel rendered ineffective assistance, requiring a new trial. *See Virgil*, 895 N.W.2d at 883.

### C. Other Issues.

Because we conclude Vinsick is entitled to a new trial, we need not address his other claims of error. However, we do note the State conceded the claims had merit and necessitated a limited remand. We take no position on those issues,

only to point out the parties' position on the matters, should they arise again before the district court.

### III.  Conclusion.

Because we conclude Vinsick established his counsel rendered ineffective assistance, we vacate Vinsick's conviction, judgment, and sentence, and we remand the case to the district court for a new trial.

**CONVICTION, SENTENCE, AND JUDGMENT VACATED AND CASE REMANDED FOR A NEW TRIAL.**